HOME SAVINGS AND LOAN ASSOCIA-
TION, Transferee, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 62–1091.

United States District Court
S. D. California,
Central Division.

Sept. 5, 1963.

Goodson & Hannam, Bruce I. Hochman, Los Angeles, Cal., for plaintiff.

Francis C. Whelan, U. S. Atty., for Southern Dist. of California, by Loyal E. Keir, Asst. U. S. Atty., Chief, Tax Section, Los Angeles, Cal., for defendant.

THURMOND CLARKE, District Judge.

In March of 1957, Plaintiff Home Savings and Loan Association, transferee (hereinafter referred to as "Home") through its attorney and agent, Thomas C. Webster, purchased all of the outstanding guarantee stock of Hollywood Savings and Loan Association (hereinafter referred to as "Hollywood"). Thereafter, on April 19, 1957, Hollywood merged into Home. The corporate existence of Hollywood terminated but its entire business was continued without interruption as an integral part of plaintiff association, Home.

All procedural requirements have been complied with by Plaintiff. This Court has jurisdiction by virtue of 28 U.S.C. §§ 1346(a)(1) and 1402(a)(1), and 26 U.S.C. § 7422. The income tax, if any, is that of Hollywood, but Home would be liable as transferee and has paid such tax as transferee.

One primary issue and several secondary issues are presented by the pleadings, but a decision on the primary issue disposes of the case in its entirety.

The primary issue is: In a merger, does the reserve for bad debts of the merged corporation become accelerated into income as a result of the merger?

Specifically here, should the pre-merger reserve for bad debts of Hollywood as of April 19, 1957, be included in its income in its final return?

■ The issues as framed in the pleadings and the history of the case are on the basis that Hollywood was a wholly-owned subsidiary of Home and, therefore, the merger was pursuant to 26 U.S.C. § 332. (All section references hereinafter are to the Internal Revenue Code of 1954). However, this approach disregards the very unusual corporate structure of a savings and loan association under the laws of the State of California. While all of the guarantee stock of Hollywood was owned by Home, the depositors of Hollywood, who, under California law, are called "shareholders," had a right to vote, a right to elect members of the Board of Directors (but not a majority of such Board), and the vote of two-thirds (2/3rds) of such shareholders was a requirement for the merger. Section 332 requires that the parent corporation be the owner of stock "possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote." While under California law the depositor-shareholder's interest is denominated "shares" as opposed to "stock," the controlling factor is not the label of the depositor-shareholder's interest but the quality of rights, preferences and privileges related to such interest. Since an affirmative two-thirds vote of the depositor-shareholders was required to approve the merger, and since such depositor-shareholders had the right to elect a certain number of members of the Board of Directors, then unless Home also owned 80% of this type of share entitled to vote, the merger could not qualify under Sec. 332 as a liquidation of a subsidiary. Home did not own any of this type of share; therefore, Section 332 was not applicable.

After the merger of Hollywood and Home, the depositor-shareholders of Hollywood became the depositor-shareholders of Home. Thereafter, the depositor-shareholders of Hollywood had the same pro-rata continuing interest in Home as they had before the merger on a consolidated basis. The merger between Hollywood and Home was a statutory merger reorganization as that term is used in Sec. 368(a) (1) (A). Under any theory, there was adequate continuity of interest.

The object and accomplishment of the plan of acquisition of Hollywood by Home and its merger into Home was a plan having a legitimate business and corporate purpose and did not have as one of its objects the avoidance of income taxes. The form and substance were the same.

In a reorganization, the reserve for bad debts of the merged corporation is not accelerated into income as a result of the merger.

■ The surviving corporation carried on the business of the merged corporation. The Court finds that as a matter of fact the need for the reserve for bad debts of Hollywood continued and did not cease at any time.

The background in this case has to a great extent revolved around the application of Section 332. In the Court's opinion, that Section was not applicable.

■ Some argument could be made that the type of interest held by the depositor-shareholders was not a class of stock within the meaning of Section 332 and this merger between Hollywood and Home was the merger of a parent and a wholly-owned subsidiary. While such result might be possible, the Court feels that since, as a matter of fact, the business of Hollywood continued in Home without interruption, the need for the reserve for bad debts continued and did not cease and, therefore, the reserve should not be restored to income.

A review of the cases, particularly two of this Circuit, confirms this result. West Seattle National Bank of Seattle v. Commissioner of Internal Revenue, 288 F.2d 47 (9th Cir. 1961); Calavo, Inc. v. Commissioner of Internal Revenue, 304 F.2d 650 (9th Cir. 1962); and Citizens Federal Savings and Loan Association of Cleveland v. United States, 290 F.2d 932 (Court of Claims 1961).

In West Seattle, the taxpayer was involved in the sale of its assets pursuant to Section 337. The sale included the accounts receivable. The Court concluded that upon such sale the reserve is accelerated into income. The West Seattle case was followed by the Court of Claims in Citizens Federal Savings and Loan Association, also a sale pursuant to Section 337. The West Seattle case was cited, along with other cases, as standing for the proposition that "any balance in a reserve for bad debts is similarly to be restored to income *in the year in which the need for it ceases*." (Emphasis supplied). In each of these cases the corporation and its business activities became completely separated, i. e., the corporation sold its business and no longer carried on the same activities. Such is not the case here. The Court of Claims in the Citizens case, supra, 290 F.2d at p. 937, went on to distinguish correctly the results that would occur under a merger pursuant to Section 332, as follows:

"Further, the plaintiff argues for non-recognition [pursuant to Sec. 337] by pointing out that under sections 332(a) and 354(a) (1) of the 1954 Code no gain is recognized on the liquidation of subsidiaries or on stock exchanges in corporate reorganizations. The short answer to this, we think, is to emphasize the clear distinction between a complete liquidation [pursuant to Sec. 337] on the one hand and liquidation into a parent corporation and reorganization of a corporation's capital structure on the other. In the latter situations [sic] the holder of the asset continues in existence, although in an altered form, and continues to experience the risk of bad debt loss. Thus, unlike the former situation where the corporation goes out of existence, the reserve does not lose its reason for existence and there is no reason not to accord non-recognition."

Under the facts of the case before this Court, the converse of the situation presented in the West Seattle case and the Citizen case presents itself. Here the entire business was carried forward within the merged corporate entities, the need for the reserve persisted, and the merger does not require the reserve to be restored to income. Unlike the Section 337 cases, we have a merger of a parent with its subsidiary, with the parent's continuing in its entirety the business of the subsidiary without interruption.

A strikingly analogous situation is found in the Calavo case, supra, of this Circuit. In that case, there was a Section 332 merger between parent and its wholly-owned subsidiary, with the parent's continuing intact the business of the subsidiary. The Commissioner of Internal Revenue had restored to income the merged subsidiary's reserve for bad debts on the same grounds as those advanced by the Government in the case before us, i. e., the subsidiary was liquidated and dissolved in the merger and thereby the need for the reserve had ceased and it must be restored to income. The Commissioner changed his position, however, in the Tax Court and conceded that, in a reorganization, the reserve for bad debts is not taken into income. The Court of this Circuit, in discussing this specific point, stated, 304 F.2d at p. 652:

"By the deficiency notices subsequently given for both taxable years, the commissioner restored to income the entire $61,000.00 reserve [for bad debts] on the ground that Calavo, Inc. [the subsidiary], was liquidated and dissolved at that time and that the need for the reserve thus had ceased. Before the Tax Court, however, the commissioner conceded that this was error and that such reserve was not restored income in the case of a § 332(a) reorganization."

By virtue of holding for the Plaintiff on the primary issue, the remaining issues of whether a bad debt was worthless in 1952, prior insurance deductions, and a late filing penalty fall by the wayside,

and the matter is disposed of in its entirety.

It follows that Judgment is ordered in favor of Plaintiff as prayed. Plaintiff shall prepare Findings of Fact and Conclusions of Law and Judgment in accordance with the foregoing.