ARGUS, INCORPORATED, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4713–63.    Filed October 14, 1965.

*Charles Melvoin* and *Lawrence Kasakoff*, for the petitioner.
*Joseph T. de Nicola*, for the respondent.

OPINION

SCOTT, *Judge:* Respondent determined that petitioner was liable as transferee for a deficiency plus interest as provided by law in the

income tax of Mansfield Industries, Inc. (Illinois) (hereinafter referred to as Mansfield-Illinois), for its taxable year July 1, 1960, to September 1, 1960, the amount of the deficiency so determined being $15,719.38. Petitioner concedes it is liable for any deficiency in tax plus statutory interest owed by Mansfield-Illinois but contests the correctness of respondent's determination of such deficiency, leaving for our decision the following issue:

Whether the balance in the reserve for bad debts of Mansfield-Illinois as of September 1, 1960, should be includable in that corporation's income for its taxable year July 1 to September 1, 1960, all of its assets, subject to its liabilities, having been transferred to petitioner on September 1, 1960.

All of the facts have been stipulated and are found accordingly.

Petitioner, a Delaware corporation organized in May 1960, has its principal office in Niles, Ill.

Mansfield-Illinois was an Illinois corporation organized in 1946 with its principal offices in Chicago, Ill. A final Federal income tax return for its taxable year beginning July 1, 1960, and ending September 1, 1960, was filed for Mansfield-Illinois on December 16, 1960, with the district director of internal revenue, Chicago, Ill.

Mansfield-Illinois was engaged in the importation, manufacture, and sales of photographic equipment. It kept its books and filed its income tax returns on an accrual basis of accounting for a fiscal year ending June 30. On its final income tax return for the taxable year July 1 to September 1, 1960, Mansfield-Illinois reported net taxable income of $31,560.99, the deductions taken in arriving at such income including an addition to reserve for bad debts in the amount of $1,640.65.

On August 9, 1960, petitioner purchased all of the outstanding capital stock of Mansfield-Illinois for over $1,500,000, and remained the sole stockholder of Mansfield-Illinois until, pursuant to an agreement of merger dated the same day, August 9, 1960, effective September 1, 1960, Mansfield-Illinois merged into petitioner in a statutory merger in accordance with the laws of the States of Delaware and Illinois. On September 1, 1960, petitioner (then Mansfield, Ltd.) changed its name to Mansfield-Industries, Inc. (the corporate name previously used by Mansfield-Illinois). On May 14, 1962, petitioner changed its name to Argus, Inc.

On the effective date of the merger, all of the assets of Mansfield-Illinois, subject to its liabilities, were transferred to petitioner and petitioner thereafter continued the business previously operated by Mansfield-Illinois. All of the outstanding shares of Mansfield-Illinois were canceled pursuant to the agreement of merger. The book value of the gross assets of Mansfield-Illinois transferred to petitioner and recorded on petitioner's books at the same basis as carried by Mans-

field-Illinois on September 1, 1960, was $2,821,298.93 subject to liabilities of not less than $1,892,810.33.

On December 31, 1960, the assets acquired by petitioner from Mansfield-Illinois on September 1, 1960, were revalued on the basis of the cost to petitioner of the capital stock of Mansfield-Illinois which it had purchased on August 9, 1960, for $1,522,200 (including acquisition expenses). Assets other than fixed assets, net of liabilities and reserves, were recorded on petitioner's books at the same values as reflected on the books of Mansfield-Illinois. Thus, accounts receivable of $233,352.03 and reserve for bad debts of $37,198.91,[1] as shown on the books of Mansfield-Illinois, were so recorded on the books of petitioner. Fixed assets, having a book value of $305,418 on the books of Mansfield-Illinois at September 1, 1960, were increased by the amount of $474,169 to $779,587, the appraised value of these assets. The balance of the aggregate purchase price not otherwise allocated and apportioned to specific assets was shown as goodwill in the amount of $161,473.

The parties agree that the correct balance in the reserve for bad debts of Mansfield-Illinois as of September 1, 1960, is $30,229.57 and that this amount constitutes the remaining balance of additions to a reserve for bad debts for which Federal income tax deductions had previously been taken by Mansfield-Illinois. The amount does not represent charges for specific receivables which had become uncollectible during the respective years since Mansfield-Illinois took its deductions for bad debts on its income tax return by additions to its reserve.

Respondent in his notice to petitioner of transferee liability increased the taxable income of Mansfield-Illinois as reported on its return for its taxable year July 1, 1960, to September 1, 1960, by $30,229.57 with the explanation that this amount represented the amount of reserve for bad debts of Mansfield-Illinois which should properly have been restored to income in that taxable year, "since the need for maintaining this reserve account ceased when this corporation was liquidated on September 1, 1960."

Each party recognizes that a bad debt reserve previously deducted from income by a taxpayer must be included in such taxpayer's income for the year in which the need for the continuance of such a reserve ceases. *Geyer, Cornell & Newell, Inc.*, 6 T.C. 96 (1946). The parties likewise agree that the $30,229.57 balance in the bad debt reserve of

---

[1] For Mansfield-Illinois' fiscal year ended June 30, 1960, respondent disallowed $6,969.34 of that corporation's addition to reserve for bad debts as being excessive. This adjustment was previously agreed to by petitioner. The parties now agree that the proper reserve for bad debts of Mansfield-Illinois as of Sept. 1, 1960, was $30,229.57 ($37,198.91 less $6,969.34). The $37,558.26 reserve as recorded on petitioner's books was composed of the reserve in the amount of $35,558.26 shown on Mansfield-Illinois' books as of June 30, 1960, prior to respondent's adjustment plus the $1,640.65 added to this reserve and taken as a deduction by Mansfield-Illinois in computing its taxable income for its taxable year July 1 to Sept. 1, 1960.

Mansfield-Illinois as of September 1, 1960, which had not been absorbed by charges of actual bad debts against the reserve, had been used prior to September 1, 1960, as deductions from income by Mansfield-Illinois. The disagreement between the parties is whether under the facts here present the need by Mansfield-Illinois for a bad debt reserve ceased as of September 1, 1960, when its statutory merger with petitioner was effected and all of its assets subject to its liabilities were transferred to petitioner, which thereafter continued the business previously operated by Mansfield-Illinois.[2]

It is petitioner's position that since the transfer of the assets of Mansfield-Illinois to it was by way of statutory merger under applicable State law, the existence of Mansfield-Illinois did not cease on September 1, 1960, but petitioner as the surviving corporation of the merger was a continuation of the entity of Mansfield-Illinois and as such had the same need for the bad debt reserve as Mansfield-Illinois.

Respondent on brief indicates that if, for income tax purposes, the transaction between Mansfield-Illinois and petitioner constituted a merger to which the provisions of section 368(a)(1)(A) of the Internal Revenue Code of 1954[3] are applicable, petitioner's position would be correct because of the provisions of section 381(c)(4)[4] and respondent's regulations thereunder (sec. 1.381(c)(4)–1(a)(1)(ii),

---

[2] Respondent at the trial objected to the materiality of the stipulated fact that petitioner continued the business previously operated by Mansfield-Illinois and argues his objection on brief. This fact is so obviously pertinent to petitioner's theory of continuing need for the bad debt reserve because of the merger that we consider it unnecessary to discuss respondent's objection to the materiality of this fact apart from the discussion of the issue in the case.

[3] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.
SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.
    (a) REORGANIZATION.—
        (1) IN GENERAL.—For purposes of parts I and II and this part, the term "reorganization" means—
            (A) a statutory merger or consolidation;
[4] SEC. 381. CARRYOVERS IN CERTAIN CORPORATE ACQUISITIONS.
    (a) GENERAL RULE.—In the case of the acquisition of assets of a corporation by another corporation—
        (1) in a distribution to such other corporation to which section 332 (relating to liquidations of subsidiaries) applies, except in a case in which the basis of the assets distributed is determined under section 334(b)(2); or
        (2) in a transfer to which section 361 (relating to nonrecognition of gain or loss to corporations) applies, but only if the transfer is in connection with a reorganization described in subparagraph (A), (C), (D) (but only if the requirements of subparagraphs (A) and (B) of section 354(b)(1) are met), or (F) of section 368(a)(1),
the acquiring corporation shall succeed to and take into account, as of the close of the day of distribution or transfer, the items described in subsection (c) of the distributor or transferor corporation, subject to the conditions and limitations specified in subsections (b) and (c).

        *        *        *        *        *        *        *

    (c) ITEMS OF THE DISTRIBUTOR OR TRANSFEROR CORPORATION.—The items referred to in subsection (a) are:

        *        *        *        *        *        *        *

        (4) METHOD OF ACCOUNTING.—The acquiring corporation shall use the method of accounting used by the distributor or transferor corporation on the date of distribution or transfer * * *

Income Tax Regs.) These regulations specifically provide with respect to acquisition of assets of a corporation by another corporation (referred to as the acquiring corporation) to which section 381 is applicable, as follows:

The acquiring corporation shall similarly take into its accounts the dollar balances of those accounts of the distributor or transferor corporation which represent reserves in respect of which the distributor or transferor corporation has taken a deduction for taxable years ending on or before the date of distribution or transfer. * * *

Without specifically so stating respondent appears to likewise recognize that this same result would follow if the transaction between petitioner and Mansfield-Illinois came within the provisions of section 332 [5] without section 334(b)(2) [6] being applicable thereto since section 381 specifically provides that it is applicable "in a distribution * * * to which section 332 * * * applies, except in a case in which the basis of the assets distributed is determined under section 334(b)(2)." We need not consider the validity of respondent's regulation as an interpretation of section 381(c)(4) providing for transfer to an acquiring corporation of the method of accounting of the transferor corporation in certain specified transfers since we agree with respondent that this section is not applicable to the transaction involved in this case. In footnote 6 of our Opinion in *Estate of Heinz Schmidt*, 42 T.C. 1130 (1964), on appeal (C.A. 9, 1964), we state that we expressed no opinion on whether the carryover of methods of accounting (sec. 381(c)(4)) would justify a carryover of a bad debt reserve since the provision was not applicable to section 351 there involved.

From the facts here present we conclude that the merger of Mansfield-Illinois into petitioner was the merger of a subsidiary into a parent corporation, the specific situation to which section 332 applies. Section 332 which provides for the treatment of distributions in com-

---

[5] SEC. 332. COMPLETE LIQUIDATIONS OF SUBSIDIARIES.

(a) GENERAL RULE.—No gain or loss shall be recognized on the receipt by a corporation of property distributed in complete liquidation of another corporation.

(b) * * * a distribution shall be considered to be in complete liquidation only if—

(1) the corporation receiving such property was * * * the owner of stock (in such other corporation) possessing at least 80 percent of the total combined voting power * * * and either

(2) the distribution is by such other corporation in complete cancellation or redemption of all its stock * * *

[6] SEC. 334. BASIS OF PROPERTY RECEIVED IN LIQUIDATIONS.

(b)(2). * * * If property is received by a corporation in a distribution in complete liquidation of another corporation (within the meaning of section 332(b)), and if—

(A) the distribution is pursuant to a plan of liquidation adopted—

* * * * * * *

(ii) not more than 2 years after the date of the transaction described in subparagraph (B) * * * and

(B) stock of the distributing corporation possessing at least 80 percent of the total combined voting power * * * was acquired by the distributee by purchase * * * during a period of not more than 12 months,

then the basis of the property in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made. * * *

plete liquidation of a subsidiary corporation by its parent includes the following provisions:

A distribution otherwise constituting a distribution in complete liquidation within the meaning of this subsection shall not be considered as not constituting such a distribution merely because it does not constitute a distribution or liquidation within the meaning of the corporate law under which the distribution is made; * * *

Respondent's regulations (sec. 1.332–2(e), Income Tax Regs.),[7] in giving an example of the application of this provision, use a situation in which the liquidation of the subsidiary was consummated by a statutory merger of a subsidiary corporation into its parent.

Petitioner does not contend that section 368(a)(1)(A) is applicable to its acquisition of Mansfield-Illinois' assets, but rather relies on the fact that the transaction constituted a merger under State law. Respondent apparently recognizes that regardless of whether a transaction comes under the provisions of section 332 or 368(a)(1)(A), his regulations require the carryover of the subsidiary's bad debt reserve to the parent except in those cases under section 332 to which section 334(b)(2) is applicable in determining the basis of the assets transferred. If the reserve were required to be carried over to the transferee corporation it would follow that the need for the reserve not having ceased there would be no inclusion thereof in the transferor corporation's income for its final year. See *Estate of Heinz Schmidt*, *supra* at 1136. It is because of the applicability of section 334(b)(2) to this case that the issue here presented arises.

That petitioner treated its acquisition of Mansfield-Illinois' assets as coming within the provisions of section 334(b)(2) is shown by the fact that it wrote up the basis of the assets acquired from Mansfield-Illinois to the cost to it of the stock of Mansfield-Illinois which it purchased on August 9, 1960. Such a writeup of assets is permitted under section 334(b)(2), but under either section 332, if section 334(b)(2) is not applicable thereto, or section 368(a)(1)(A), the transferee corporation takes as its basis of the assets the basis of the transferor corporation.

---

[7] Sec. 1.332–2 [Income Tax Regs.]. Requirements for nonrecognition of gain or loss.

(e) The application of these rules may be illustrated by the following example:

Example. On September 1, 1954, the M Corporation had outstanding capital stock consisting of 3,000 shares of common stock, par value $100 a share, and 1,000 shares of preferred stock, par value $100 a share, which preferred stock was limited and preferred as to dividends and had no voting rights. On that date, and thereafter until the date of dissolution of the M Corporation, the O Corporation owned 2,500 shares of common stock of the M Corporation. By statutory merger consummated on October 1, 1954, pursuant to a plan of liquidation adopted on September 1, 1954, the M Corporation was merged into the O Corporation, the O Corporation under the plan issuing stock which was received by the other holders of the stock of the M Corporation. The receipt by the O Corporation of the properties of the M Corporation is a distribution received by the O Corporation in complete liquidation of the M Corporation within the meaning of section 332, and no gain or loss is recognized as the result of the receipt of such properties.

Section 334(b)(2), which provides that where property is received by a corporation in a distribution in complete liquidation within the meaning of section 332(b) (the liquidation of a subsidiary by a parent corporation), the basis of the property in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made where the stock was acquired by purchase within a 12-month period not more than 2 years prior to the date of the distribution of the assets to the parent, was a codification of the holding of this Court in *Kimbell-Diamond Milling Co.*, 14 T.C. 74 (1950), affirmed per curiam 187 F. 2d 718 (C.A. 5, 1951), certiorari denied 342 U.S. 827 (1951). In the *Kimbell-Diamond* case we held that where a corporation acquired stock of another corporation for the purpose of liquidating that other corporation in order to obtain its assets, the transaction in substance constituted a purchase by the acquiring corporation of the assets of the other corporation. From this we concluded that the basis of the assets so acquired by a corporation was the cost to the corporation of the stock it purchased. We concluded that the transaction was not in substance a reorganization within the meaning of section 112(b)(6) of the Internal Revenue Code of 1939, which section is substantially the same as sections 332 (a) and (b) of the Internal Revenue Code of 1954.

For income tax purposes the basis of assets acquired in a transaction that falls under section 334(b)(2) is determined as if the assets had been purchased by the acquiring corporation for the price paid for the stock which it acquired in order to acquire the assets. In our opinion consistency demands that for related purposes the transaction should also be treated as the purchase by one corporation of all of the assets of another corporation. In a comparable situation in the recent case of *J. E. Hawes Corp.*, 44 T.C. 705 (1965), we held that the balance in the bad debt reserve of the corporation that sold its assets including its accounts receivable constituted ordinary income to the transferor corporation on the date of such sale. The basis of our holding was that upon the sale of the accounts receivable the need to the transferor corporation for the bad debt reserve ceased. In *West Seattle National Bank of Seattle*, 33 T.C. 341 (1959), affd. 288 F. 2d 47 (C.A. 9, 1961), we held that where a corporation sold its business including its accounts receivable to another corporation which assumed its liabilities, that, even though no gain or loss was recognized on the sale, since it was pursuant to a plan of complete liquidation under section 337, the balance in the transferor corporation's reserve for bed debts was properly includable in the income of that corporation for the year of the sale since the need for maintaining the reserve ceased upon the sale of the assets. In so holding, we pointed out that the reserve was neither an asset nor a liability but merely an offset against income in recogni-

tion of the fact that accounts receivable may not be collectible in full and that unlike an asset or a liability, it cannot be transferred to any other entity. See also *Estate of Heinz Schmidt, supra.*

Petitioner here contends that there was no change in entity since under applicable State law such is the effect of the merger. In our opinion the effect of a merger under State law is not the determining factor for Federal income tax purposes. The various sections of the Internal Revenue Code dealing with the treatment of transactions for income tax purposes upon the transfer of assets by one corporation to another are controlling as to the nature of the transaction for Federal income tax purposes. In the instant case, for tax purposes petitioner in effect purchased the assets of Mansfield-Illinois when it liquidated that corporation in accordance with a plan adopted on the same day on which it purchased all of the outstanding stock. Under this view of the facts, the cases are uniform in holding that the unused balance in the reserve for bad debts is restored to the liquidating corporation's income since the need for such reserve ceases upon the transfer of its assets to the acquiring corporation.

The cases relied upon by petitioner are distinguishable from the instant case. *Calavo, Inc.* v. *Commissioner,* 304 F. 2d 650 ('C.A. 9, 1962), reversing and remanding a Memorandum Opinion of this Court, contained a statement that the Commissioner conceded before the Tax Court error in his determination that a bad debt reserve should be added into the final year's income of the liquidated corporation in a case to which section 332 was applicable. While no explanation of the Commissioner's concession is set forth in the Court's opinion, that concession does conform with the apparent position taken by respondent in this case that the reserve would not be restored to income in a section 332 transaction to which section 334(b) (2) was not applicable in accordance with his interpretation of the provisions of section 381(c) (4).

The dictum in the case of *Citizens Federal Savings & Loan Ass'n* v. *United States,* 290 F. 2d 932 ('Ct. Cl. 1961), likewise does not explain the inference which might be drawn therefrom that the bad debt reserve is not restored to income on liquidation of subsidiaries or stock exchanges in corporate reorganizations under sections 332(a) and 354(a) (1). As we previously pointed out, this may have been based on respondent's interpretations of section 381(c) (4) as requiring a carryover of the reserve in this type of reorganization. If this is not the basis for the statement, the difficulty with that dictum "is that it does not appear to be based upon any statutory provision." *Estate of Heinz Schmidt, supra* at 1135.

The other case relied upon by petitioner is *Home Savings & Loan Ass'n* v. *United States,* 223 F. Supp. 134 (S.D. Cal. 1963). The holding of the court in that case was based on the conclusion that under

the facts there present the transaction constituted a reorganization within the provisions of section 368(b)(1)(A). The court distinguished the case from cases involving section 337 and compared it to *Calavo, Inc.* v. *Commissioner, supra,* in which the respondent had conceded that the restoration of the reserve was not proper in a transaction to which section 332(a) was applicable and section 334(b)(2) inapplicable. Regardless of the correctness of the court's conclusion that under the facts there present section 368(a)(1)(A) governs the transaction, the *Home Savings & Loan Ass'n* case is of no assistance to petitioner in the instant case since here the provisions of section 334(b)(2) are applicable to the transaction.

We sustain respondent in his addition of the unused balance of the reserve for bad debts to the income of Mansfield-Illinois for the taxable year in which the need for the reserve ceased because of the transfer by Mansfield-Illinois of all of its assets including its accounts receivable to petitioner. We have not overlooked the fact that even though petitioner allocated the price it paid for the Mansfield-Illinois stock among the assets acquired, it transferred the accounts receivable at their face value on Mansfield-Illinois' books and transferred the bad debt reserve also at the amount shown on Mansfield-Illinois' books. This method of handling the accounts on the books of petitioner does not establish the value of the accounts receivable. If such a fact were material, it would be incumbent upon petitioner to establish by evidence the nature of the various accounts and the likelihood of their collectibility. However, in this case such facts would not be material for, as we stated in *J. E. Hawes Corp., supra* at 708, "If a debt is sold at a loss prior to being charged off, the loss does not constitute a bad debt loss, but rather a loss upon the sale of property." Since as a matter of tax law the transaction here involved in effect constituted a sale of assets by Mansfield-Illinois to petitioner, this statement would be similarly applicable here.

*Decision will be entered for respondent.*