WEST SEATTLE NATIONAL BANK OF SEATTLE, A NATIONAL BANKING ASSOCIATION IN VOLUNTARY LIQUIDATION, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74361.    Filed November 27, 1959.

*R. A. Moen, Esq.*, and *E. S. McCord, Esq.*, for the petitioner.
*George E. Constable, Esq.*, and *Harris J. Nuernberg, Esq.*, for the respondent.

#### OPINION.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioner's income tax for the taxable period January 1, 1956, to May 28, 1956, in the amount of $6,417.58.

The single issue involved is whether when petitioner sold its banking business as a going concern on January 27, 1956, and, pursuant to a preadopted plan of complete liquidation, dissolved on May 28, 1956, the balance in its reserve for bad debts at the time the assets, including receivables, were sold is taxable to it as ordinary income for the taxable period January 1, 1956, to May 28, 1956.

All the facts were stipulated and the stipulation of facts is included herein by this reference.

At all times material hereto, prior to the close of business on January 27, 1956, West Seattle National Bank of Seattle, sometimes

hereafter referred to as the Bank, was a national banking association, a body corporate, duly organized and existing under the laws of the United States of America, and engaged in a general banking business in Seattle, Washington. Petitioner's income tax return for the period here involved was filed with the district director of internal revenue at Tacoma, Washington.

At the close of business on January 27, 1956, the Bank was carrying on its books a reserve for bad debts in the sum of $19,250.70. Said reserve for bad debts had been established in accordance with usual business practices and accounting methods acceptable to and approved by the Commissioner of Internal Revenue, and had been augmented from year to year.

On January 27, 1956, the Bank adopted a plan of complete liquidation, pertinent parts of which are as follows: The banking business of the Bank, as a going concern, would be sold to the National Bank of Commerce of Seattle. All property, whether ledger or nonledger, and including the lease of the banking premises, the cash, bonds, notes, and all other assets in which the Bank had any right, title, or interest were to be included in the sale. In partial payment for the purchase of said assets and banking business, the National Bank of Commerce would agree to pay the liabilities of the Bank, except for Federal income taxes and the liability of the Bank to the stockholders on account of their capital investment. In addition, the National Bank of Commerce was to pay the Bank the sum of $505,000. After the sale the Bank would voluntarily dissolve and all of its assets were to be distributed in complete liquidation within a 12-month period beginning on the date of adoption of the plan.

On January 27, 1956, the Bank sold all of its property to the National Bank of Commerce of Seattle, and in payment therefor the National Bank of Commerce assumed all liabilities of the Bank and paid the Bank $505,000. All of the Bank's loans and receivables were transferred to the National Bank of Commerce at full face value.

The plan of complete liquidation was adopted to comply with the provisions of section 337, I.R.C. 1954, so that any gain on the sale of the assets of the Bank would qualify for nonrecognition of gain or loss under that section. None of the property sold was within the definition of excluded property contained in section 337(b)(1) and (2).

After the sale was completed, the only asset owned by the Bank was the $505,000 cash paid to it by the National Bank of Commerce, plus an amount equal to the Federal income tax due as computed by the Bank. The reserve for bad debts of $19,250.70 was retained as

a credit balance on the Bank's books. Partial distributions were made to the stockholders in liquidation and a final distribution was made to the stockholders on May 28, 1956.

In due course the Bank filed an income tax return for the taxable period January 1, 1956, to May 28, 1956, reporting a tax due of $2,386. It did not include in income reported any amount as a result of the transaction whereby it sold its business and assets to the National Bank of Commerce.

Upon audit of petitioner's return for the year 1956, respondent added to the Bank's ordinary income for that year the balance in the Bank's reserve for bad debts at the time its assets were sold. This adjustment was made on the theory that the amounts added to the reserve from time to time, and which made up the balance in the account, had been deducted from income when added to the account, and when the Bank disposed of its notes and accounts receivable against which the reserve had been established, there was no longer any need for the reserve, and the amount thereof should be restored to income in that year. Respondent's action in doing this finds full support in the decided cases unless, as petitioner claims, some provision of the Code makes this well-established principle inapplicable in the present situation. This Court and other courts have long held that any balance in a reserve for bad debts is properly to be restored to income of the year in which the need for maintaining the reserve ceases. *Peabody Coal Co.*, 18 B.T.A. 1081, aff'd. 55 F. 2d 7 (C.A. 7), certiorari denied 287 U.S. 605; *North American Coal Corporation*, 32 B.T.A. 535, aff'd. 97 F. 2d 325 (C.A. 6); *Geyer, Cornell & Newell, Inc.*, 6 T.C. 96; *O. P. Lutz*, 29 T.C. 469; *Great Northern Ry. Co.* v. *Lynch*, 292 F. 903; *Wichita Coca Cola Bottling Co.* v. *United States*, 152 F. 2d 6 (C.A. 5), certiorari denied 327 U.S. 806.

But petitioner maintains that this gain, if any, on its reserve account must result from the sale of all its assets and inasmuch as it complied fully with all the requirements of section 337, I.R.C. 1954, the gain cannot be recognized or taxed to the corporation. Section 337(a) provides that if a corporation adopts a plan of complete liquidation after June 22, 1954, and within a 12-month period beginning on the date of the adoption of the plan distributes all its assets in complete liquidation of the corporation, then no gain or loss shall be recognized to such corporation from the sale of its property within the 12-month period. Subsections (b) (1) and (2) exclude from the nonrecognition provision certain types of assets sold or disposed of.

There is no question that petitioner has complied with all the requirements of section 337, and it is conceded that the bad debt

reserve is not an asset of the type covered by subsections (b) (1) and (2). However, this is of no aid to petitioner with respect to the income here in question because, in our opinion, section 337 does not apply to such income.

Petitioner correctly asserts that section 337 was enacted by Congress to avoid a tax at both the corporate level and the stockholder level on the gain resulting from a sale of the corporate assets, pursuant to a plan of complete liquidation of the corporation. See Report of House Ways and Means Committee on Internal Revenue Code of 1954, H. Rept. No. 1337, 83d Cong., 2d Sess., p. 106; also Senate Finance Committee Report on Technical Amendments Act of 1958, H. Rept. No. 1983, 85th Cong., 2d Sess., p. 29. But this section affords relief only from a double tax on the gain from a sale of assets. The income here sought to be taxed did not arise from the sale of assets. The only relation the sale of petitioner's assets had to this income is that it removed the necessity for maintaining the reserve for bad debts because petitioner no longer held receivables, the full collection of which might be doubtful. No evidence was presented that the receivables were sold for less than their full face value, and a schedule filed by petitioner in support of its tax return for the year 1956 indicates that the receivables were transferred to the purchasing bank at their full book value. So there is no evidence of a loss on the disposition of these receivables which should be charged against the bad debt reserve before it is restored to income.

As we stated in *Geyer, Cornell & Newell, Inc., supra,* a reserve for bad debts consists of entries upon books of account. It is neither an asset nor a liability. It merely offsets assets in recognition of the fact that the assets may not be collectible in full. Unlike an asset or a liability it cannot be transferred to any other entity. Recognition of this factor is found in the transaction here involved whereby petitioner sold all of its assets. It is clear from the schedule above mentioned that the reserve for bad debts was not transferred to the purchasing bank and that none of the consideration received by petitioner was attributable to the reserve for bad debts.

The income here sought to be taxed not representing gain on the sale of assets pursuant to a plan of complete liquidation, section 337, I.R.C. 1954, is not applicable. Therefore, under the rule first discussed above, the balance in the reserve for bad debts at the time of the sale of petitioner's assets is taxable to petitioner as ordinary income in the year 1956.

*Decision will be entered for the respondent.*