**WEST SEATTLE NATIONAL BANK OF SEATTLE, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16838.**

United States Court of Appeals Ninth Circuit.

Feb. 27, 1961.

Kerr, McCord & Moen, R. A. Moen, James N. O'Conner, Seattle, Wash., for petitioner.

Howe, Davis, Riese & Jones, John M. Davis & James H. Madison, Seattle, Wash., amici curiae. Carolyn E. Agger, Julius M. Greismas, Washington, D. C., amici curiae for First Security Corporation.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Bruce J. Terris, attorneys, Dept. of Justice, Washington, D. C., for respondent.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

MERRILL, Circuit Judge.

This case presents the question whether upon a sale of corporate assets pursuant to a plan of complete liquidation with the accounts receivable being sold at face value, the taxpayer's reserve for bad debts constitutes ordinary income and is taxable as such or constitutes gain and is free from tax under § 337(a) of Internal Revenue Code of 1954, 26 U.S. C.A. § 337(a).

The taxpayer, an incorporated national banking association conducting a general banking business in Seattle, Washington, adopted a plan of complete liquidation on January 27, 1956. Pursuant to this plan, the taxpayer on that date sold all of its assets including its loans receivable to the National Bank of Commerce of Seattle. Final distribution to its stockholders was made by the taxpayer on May 28, 1956. At the time of sale, taxpayer was carrying on its books a reserve for bad debts in the amount of $19,250.70.

In its income tax return for the period from January 1, 1956, to May 28, 1956, the taxpayer reported the sale of its loans receivable at face value. The difference between the face value sale price and the net or book value of its loans (being the amount of bad debt reserve) was reported as gain and nontaxable under 26 U.S.C. § 337(a). The Commissioner of Internal Revenue added the amount of the bad debt reserve as taxable income and determined a deficiency in the sum of $6,417.-58. The tax court upheld the commissioner's determination, 33 T.C. 341, and the taxpayer has petitioned this court for review. Two briefs have been filed by amici curiae, First Security Corporation and Dishman State Bank, supporting the position of the taxpayer.

The taxpayer first contends that the only evidence as to sale price is as to the price paid for the assets in their entirety; that there is accordingly no evidence of the price for which the loans receivable were sold; that it should, rationally, be presumed that no greater price was paid than their net or book value. In its tax return for the period in question, the taxpayer reported the sale of its assets. The schedule covering this sale does purport to break down the sale price and indicates that the loans receivable were sold at face value. This was sufficient to warrant a finding by the commissioner to this effect and to justify the Tax Court in upholding the finding of the commissioner.

The principal question upon this appeal relates to the following language of § 337 (a):

"If—

"(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

"(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such twelve-month period."

The taxpayer argues that legislative history of this section demonstrates congressional intent to avoid a double tax (once to the corporation and again to its shareholders) upon sales of corporate property pursuant to a plan of liquidation. The taxpayer states that after sale of its property the only asset held by it was the sale proceeds, which were promptly distributed to the stockholders, and that those stockholders were subject to tax on gains realized by them upon such distribution. It contends that to levy a tax upon it as to the bad debt reserve would amount to a double tax, which the section was intended to prevent. It asserts that if anything was realized from the bad debt reserve it was realized out of the sale of its assets and must be attributed to that sale; that under any reasonable construction of § 337 (a) the sums so realized must be held to be gain.

Section 111 of the 1954 Code, 26 U.S. C. § 111, deals with the recovery of bad debts. This section, without expressly stating it, recognizes the general rule that, if an amount deducted from gross income in one taxable year is recovered in a later year, the recovery is income in the later year.

The taxpayer concedes that this rule applies to the collection of bad debts, but insists that it should not apply in the case of sales.

Section 111 does not define the term "recovery." The term is defined, however, in the regulations for § 111 (and the predecessor § 22(b) (12) of the 1939 Code, as amended, 26 U.S.C.A. § 22(b) (12)) as including both collections and sales. Income Tax Regulations, 1939 Code, § 39.22(b) (12)—1(a) (2); Income Tax Regulations, 1954 Code, § 1.-111—1(a) (12). The fact that proceeds from sales are "recoveries" of bad debts previously charged off is recognized by Merchants National Bank of Mobile v. Commissioner of Internal Revenue, 5 Cir., 1952, 199 F.2d 657.

Under § 111, it is not the manner of recovery which determines the taxability of the sums recovered. The significant question is whether tax benefit was realized when the deduction was taken. If not, a recovery exclusion is allowed. If a tax benefit had been realized, the general rule applies and the recovery restores to income that which had been deducted. See 1 Merten's Law of Federal Income Taxation, pages 62, 66, §§ 7.34, 7.35.

The taxpayer and amici curiae assert that to apply this rule to the bad debt reserve of a liquidating corporation is to ignore the fact that it is a "valuation reserve"; that accounting authorities and government agencies have recognized this to be so;[1] that in this respect it is identical to a reserve, for depreciation. The contention is made that the charge-off for bad debts, which the reserve in essence is, amounts to an adjustment of the value of the loans receivable establishing a new basis for this asset. The taxpayer relies upon § 1011 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1011, to the effect that in determining the existence of gain or loss reference shall be had to the adjusted basis of the asset sold; and upon § 1016(a), 26 U.S.C.A. § 1016(a), which provides:

"Proper adjustment in respect of the property shall in all cases be made—

"(1) For expenditures, receipts, losses, or other items, properly chargeable to capital account * *."

Assuming, without deciding, that a charge-off for bad debts establishes a new basis for accounts receivable under § 1016(a), it does not follow that every realization of sums in excess of adjusted basis is to be deemed a gain. This is not what § 1011 says. The fact that an increment is, for tax purposes, a gain does not follow from the mere fact that there is an increment. If it is to be held a gain, it must be because it is of the char-

acter of a gain. That a bad debt recovery is not of such a character was pointed out by this court in National Bank of Commerce of Seattle v. Commissioner of Internal Revenue, 9 Cir., 1940, 115 F.2d 875. There it was said that to the extent of deductions taken, a debt loses its nature as capital and takes on the character of the untaxed income which the deduction represents. An increment realized in this area over and beyond adjusted basis does not then represent any gain in capital or asset value. Rather, it represents income earned in the past which has escaped taxation.

Nor does the fact that the bad debt reserve is generally regarded as a valuation reserve affect the result. While the book value established thereby has an accounting significance, it is still based upon an *expectation* that loss of value will occur and not upon the fact that such loss has already occurred. It is a prediction of value and not a statement of present fact. Recovery of a debt which has been written off is not then a realization of a gain in asset value. It simply demonstrates that the value prediction was faulty and did not conform to the fact.

In this respect the bad debt reserve is quite different from the depreciation reserve. A depreciation or depletion reserve is founded not upon the expectation of loss but upon facts. It recognizes that through depletion, wear and tear or obsolescence, the asset has to a certain extent actually been used up and that what is recovered by sale is recovered only from the unused portion of the asset. It recognizes that to the extent that the asset has been used up the owner has already realized or spent the asset's value and that his remaining investment is limited to the unrealized portion. The adjustment reflects the extent to which the asset has actually been exhausted by depletion, wear and tear or obsolescence. The question is whether a gain or loss has been realized on that which remains.

---

[1] See, e. g., Item 27(d), page 7, of Instructions for Preparation of Reports of Condition by National Banking Associations, from 2130–C, Revised March, 1960, issued by the Comptroller of the Currency, Treasury Department.

We conclude that upon recovery of the bad debt reserve through sale of the accounts receivable the amount of that reserve does not constitute gain under § 337 but is taxable as ordinary income to the liquidating corporation.

The taxpayer contends that to apply this reasoning in the case at bar is to return to an emphasis upon form rather than substance in determining the tax consequences of the sales of property of liquidating corporations—an unfortunate emphasis which § 337 was designed to eliminate.[2] It points out that had the loans receivable here been sold at book or net value rather than at face value, no income would have been realized. It asserts that all that this decision will accomplish will be to emphasize the importance of specifying a net value sales price in the sale of assets pursuant to a plan of liquidation.

We do not regard this accomplishment as purely formal and without substantial effect. The price paid by a purchaser for accounts receivable will affect the extent to which he himself can write off bad debts or take deductions for a bad debt reserve upon the accounts purchased. The ability of a liquidating corporation to transfer accounts receivable at face value with no tax consequences to itself would seem to result in its ability to confer a tax advantage upon its transferee: an advantage analogous to a stepped-up basis for an asset sold.

Affirmed.

2. The House Ways and Means Committee, reported, H.Rep. No. 1337, 83d Cong., 2d Sess., p. A106; 3 U.S.C.Cong. & Adm. News (1954) 4244:

"Sec. 333 incorporates in the bill rules for treatment of the problem raised in the decisions of Commissioner [of Internal Revenue] v. Court Holding Co. (324 U.S. 331, 65 S.Ct. 707 [89 L.Ed. 981]) and U. S. v. Cumberland Public Service Co. (338 U.S. 451, 70 S.Ct. 280 [94 L. Ed. 251]) and the numerous related cases. These decisions concern the question of whether the corporation or a shareholder effected a sale of property in connection with a liquidation. Under the decision in the Cumberland Pub-

lic Service Co. case, supra, it is indicated that in the case of an actual distribution in liquidation of the corporation prior to an actual sale by the shareholders a single tax (is) imposed at the shareholder level. Accordingly, under present law, the tax consequences arising from sales made in the course of liquidation depend primarily upon the formal manner in which transactions are arranged. The possibility that double taxation may occur in such cases results in causing the problem to be a trap for the unwary.

"Your committee intends in Sec. 333 to provide a definitive rule which will eliminate any uncertainty."