ESTATE OF HEINZ SCHMIDT, DECEASED, AND CHARLOTTE SCHMIDT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2116–63.    Filed September 30, 1964.

*Max Weingarten,* for the petitioners.
*John O. Hargrove,* for the respondent.

## OPINION

RAUM, *Judge:* The sole issue before us is whether the balance in the proprietorship's reserve for bad debts account in the amount of $27,445.71, as of June 30, 1959, was includable in petitioners' taxable income in 1959 when, on June 30, 1959, the business of the proprietorship, including accounts receivable, was transferred to the corporation in a transaction which qualified for nonrecognition under section 351.[2] The Government concedes that the transfer qualifies under section 351 and it does not challenge the amount in the reserve for bad debts as of June 30, 1959, as an unreasonable one. However,

[2] SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.

(a) GENERAL RULE.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.

its position is that when the proprietorship terminated, the need for maintaining the reserve for bad debts ceased and therefore the balance in the account at the time of termination should be restored to income. Petitioners, on the other hand, contend that no restoration of income in respect of the balance in the reserve for bad debts account should be made because all of the assets of the proprietorship, including accounts receivable subject to the reserve for bad debt, were transferred to a corporation in a tax-free exchange under section 351 and the transferee carried on the business of the transferor and maintained the foregoing accounts receivable and reserve for bad debts in the same manner as had petitioners. For reasons hereinafter stated, we agree with the Government.

The Government's position follows Rev. Rul. 62–128, 1962–2 C.B. 139,[3] and is in accord with our decision in *West Seattle National*

(b) RECEIPT OF PROPERTY.—If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then—

    (1) gain (if any) to such recipient shall be recognized, but not in excess of—

        (A) the amount of money received, plus

        (B) the fair market value of such other property received ; and

    (2) no loss to such recipient shall be recognized.

(c) SPECIAL RULE.—In determining control, for purposes of this section, the fact that any corporate transferor distributes part or all of the stock which it receives in the exchange to its shareholders shall not be taken into account.

(d) CROSS REFERENCES.—

    (1) For special rule where another party to the exchange assumes a liability, or acquires property subject to a liability, see section 357.

    (2) For the basis of stock, securities, or property received in an exchange to which this section applies, see sections 358 and 362.

    (3) For special rule in the case of an exchange described in this section but which results in a gift, see section 2501 and following.

    (4) For special rule in the case of an exchange described in this section but which has the effect of the payment of compensation by the corporation or by a transferor, see section 61(a)(1).

SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.

(c) CONTROL.—For purposes of part I (other than section 304), part II, and this part, the term "control" means the ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation.

[3] Rev. Rul. 62–128, 1962–2 C.B. 139, provides :

"A taxpayer, engaged in a business as a sole proprietor, transferred all of the assets of his business, subject to its liabilities, to a corporation controlled by the transferor in a nontaxable exchange under the provisions of section 351 of the Internal Revenue Code of 1954. Prior to the transfer, the business had, on its books of account, a reserve for bad debts which had been accumulated by additions for which the taxpayer had derived full tax benefits in prior taxable years. *Held*, under these circumstances the reserve for bad debts is not transferable to any other entity. Accordingly, the reserve for bad debts represents ordinary income to the taxpayer for the taxable year during which the transfer of the accounts receivable was made since, during such time, his need for the reserve ceased. See *Geyer, Cornell & Newell, Inc.* v. *Commissioner,* 6 T.C. 96, acquiescence, C.B. 1946–1, 2 ; Rev. Rul. 57–482, C.B. 1957–2, 49 ; and *C. Standlee Martin, Inc.* v. *Riddell,* 56–2, U.S.T.C. 9989, 51 A.F.T.R. 1376. Under similar circumstances, a partnership must likewise include such reserve for bad debts in its final return as ordinary income. However, to the extent that the additions to the reserve for bad debts in prior years may not have resulted in tax benefits, they need not be included in the transferor's gross income. See *M. & E. Corporation* v. *Commissioner* 7 T.C. 1276, acquiescence, C.B. 1947–1, 3."

*Bank of Seattle*, 33 T.C. 341, affirmed 288 F. 2d 47 (C.A. 9). In the *West Seattle* case the corporate taxpayer disposed of all its business in a tax-free transaction pursuant to a plan of complete liquidation under section 337 of the 1954 Code. It had a reserve for bad debts composed of amounts added thereto from time to time which had been deducted annually from its gross income, and it was there held that when the corporation disposed of its business "there was no longer any need for the reserve, and the amount thereof should be restored to income" (33 T.C. at 343). The Court further ruled that the non-recognition provisions of section 337 did not apply to such income. Those provisions were intended to relieve from tax the gain realized upon disposition of the corporation's assets, but (33 T.C. at 344)—

The income here sought to be taxed did not arise from the sale of assets. The only relation the sale of petitioner's assets had to this income is that it removed the necessity for maintaining the reserve for bad debts because petitioner no longer held receivables, the full collection of which might be doubtful.

A like result is called for in the present case. Here, too, there was a nonrecognizable transaction, and pursuant to the applicable provisions of section 351,[4] no gain or loss was recognized upon the transfer of the proprietorship to the corporation. The income here in question is similarly not gain upon the transfer of assets. Rather, this case, like *West Seattle*, involves amounts of income realized under the taxpayers' system of accounting *prior* to the transfer, income which had been relieved of tax by reason of offsetting bookkeeping entries in a reserve account; and the Commissioner's adjustment merely restored the balance in that account to income when it became clear that the reserve was no longer required by the taxpayers.

It is true, as petitioners point out, that in *Citizens Federal S. & L. Ass'n of Cleveland* v. *United States*, 290 F. 2d 932 (Ct. Cl.), which followed the *West Seattle* case, there is a dictum (p. 937) which distinguishes a sale of the type involved therein from a nonrecognizable transaction where the same interests continue to operate the business in a different form and where the need for the reserve continues. The difficulty with that dictum, however, is that it does not appear to be based upon any statutory provision, nor have the parties herein called our attention to any statutory language providing for the carryover

---

[4] Whether sec. 351 was applicable in view of the emergence of Leimbrock and Grisay as stockholders with an aggregate interest of some 46 percent, all in accord with an apparently preexisting plan, would seem to raise a serious question. However, the parties have agreed that sec. 351 was satisfied, and we accept that position for the purpose of this case only.

of the bad debt reserve to the transferee. Although the Code contains various provisions dealing with the carryover of *basis* of transferred assets,[5] we have found none requiring or sanctioning the carryover of a bad debt reserve account into the hands of the transferee corporation in a section 351 transaction.

If the result for which petitioners contend is correct, then the transferee corporation must start out with the $27,445.71 reserve, without obtaining a deduction therefor. Such reserve would then serve as a base for determining the reasonableness of future additions thereto; and when the business is finally wound up the balance in the reserve would be restored to income in the hands of the transferee. Thus, the $27,445.71 balance at the time of the transfer would either be absorbed by bad debts sustained by the transferee or it would ultimately be included in income of the transferee. But we know of nothing in the statute that would require or permit any such practice, regardless of how the parties have in fact handled the matter. Such result would appear to be desirable, but we are dealing with a statute characterized by a high degree of specificity,[6] and we must take it as we find it. In the absence of any provision for carryover of the reserve account, we must hold that an adjustment to income, otherwise proper, is not to be disapproved merely because there was a tax-free transaction pursuant to section 351.[7] We follow our prior decision in the *West Seattle* case, and hold that the revenue ruling involved herein represents a proper interpretation of the statute as it is presently formulated.

*Decision will be entered for the respondent.*

---

[5] Thus, sec. 362(a)(1) provides that the basis of the assets received by a corporation in a sec. 351 transfer "shall be the same as it would be in the hands of the transferor." Indeed, pursuant to these provisions the basis for the $914,564.38 receivables of the proprietorship transferred to the corporation would remain the same in the hands of the transferee; but neither these provisions nor any other provisions require any adjustment in such basis upon transfer by reason of the bad debt reserve relating to such receivables. Moreover, the original basis of these receivables in the hands of the proprietorship was in no way affected by the bad debt reserve (see secs. 1012 and 1016), nor do petitioners contend otherwise.

[6] In addition to the provisions dealing with carryover of basis, the Code contains a number of highly specific provisions relating to carryovers of net operating losses, earnings and profits, capital losses, methods of accounting, inventories, and other items. Sec. 381. But regardless of whether the carryover of "methods of accounting" would justify a carryover of a bad debt reserve—a matter on which we express no opinion—the provisions of sec. 381 are explicitly limited to certain types of corporate readjustments that do not include sec. 351 transfers.

[7] The dictum in the *Citizens Federal* case was followed in *Home Savings and Loan Ass'n v. United States*, 223 F. Supp. 134 (S.D. Calif.), and the reason for the Government's failure to pursue an appeal therein has not been disclosed. Similarly, there has been no explanation of the Commissioner's position in *Calavo, Inc. v. Commissioner*, 304 F. 2d 650, 652 (C.A. 9), reversing on other grounds a Memorandum Opinion of this Court.