ESTATE of Heinz SCHMIDT, Deceased, and Charlotte Schmidt, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 19809.

United States Court of Appeals
Ninth Circuit.

Jan. 11, 1966.

Max Weingarten, Bronson, Bronson & McKinnon, San Francisco, Cal., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Michael Mulroney, Jack Levin, Attys. Dept. of Justice, Washington, D. C., for respondent.

Irell & Manella, Edmund M. Kaufman, Ronald L. Blanc, Beverly Hills, Cal., amici curiæ.

Before HAMLEY, JERTBERG and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

This is a petition to review a decision of the Tax Court of the United States, reported at 42 T.C. 1130. We reverse.

The facts are not in dispute. From 1935 until June 30, 1959 taxpayer husband[1] operated a business as a single proprietorship. Pursuant to permission given by the Commissioner of Internal

---

1. Petitioner is the wife, acting individually and as executrix of the will of her husband. In this opinion we refer to the husband as "taxpayer."

Revenue, the business, which was on the accrual basis of accounting, used the reserve method of accounting for bad debts. As of June 30, 1959 the business had accounts receivable in the amount of $914,564.38 and the reserve amounted to $27,445.71. On that date the taxpayer transferred the business to a corporation in exchange for an agreement by the corporation to assume all of the liabilities of the business and the issuance to the taxpayer of shares of the corporation's stock. The corporation continued to conduct the same business. The accounts receivable were transferred subject to the reserve, and in computing the net value of the business ($45,023.19) as required by the agreement, the reserve was deducted from the face amount of the receivables. The taxpayer received stock of the corporation having a par value of $45,000.

The Commissioner assessed a deficiency in the income tax of the taxpayer for the year 1959, based solely upon his determination that, by reason of the foregoing transaction, the taxpayer no longer had need of the reserve, the receivables having been transferred to the corporation, and that he therefore realized income in the amount of the reserve. The taxpayer had had the benefit of the reserve, for tax purposes, in 1959 and prior years.

It is conceded that the transaction falls within the provisions of section 351 of the Internal Revenue Code, the material portions of which are set out in the margin.[2] In its decision the Tax Court relied upon Revenue Ruling 62–128, 1962–2 C.B. 139 [3] and also on its decision in West Seattle Nat'l Bank, 33 T.C. 341, aff'd, 9 Cir., 1961, 288 F.2d 47.

A statute containing substantially the same provisions as present section 351 has been on the books ever since the Revenue Act of 1921.[4] We find it as remarkable as does the taxpayer that no reported case has been found prior to this one in which the Commissioner has taken this position. Yet there must have been literally thousands of businesses transferred by taxpayers to corporations

2. "§ 351. *Transfer to corporation controlled by transferor.*
(a) *General rule*—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property."

3. "A taxpayer, engaged in a business as a sole proprietor, transferred all of the assets of his business, subject to its liabilities, to a corporation controlled by the transferor in a nontaxable exchange under the provisions of section 351 of the Internal Revenue Code of 1954. Prior to the transfer, the business had, on its books of account, a reserve for bad debts which had been accumulated by additions for which the taxpayer had derived full tax benefits in prior taxable years. *Held*, under these circumstances the reserve for bad debts is not transferable to any other entity. Accordingly, the reserve for bad debts represents ordinary income to the taxpayer for the taxable year during which the transfer of the accounts receivable was made since, during such time, his need for the reserve ceased. See Geyer, Cornell & Newell, Inc. v. Commissioner, 6 T.C. 96, acquiescence, C.B. 1946–1,2; Rev. Rul. 57–482, C.B. 1957–2,49; and C. Standlee Martin, Inc. v. Riddell, 56–2, U.S.T.C. 9989, 51 A.F.T.R. 1376. Under similar circumstances, a partnership must likewise include such reserve for bad debts in its final return as ordinary income. However, to the extent that the additions to the reserve for bad debts in prior years may not have resulted in tax benefits, they need not be included in the transferor's gross income. See M. & E. Corporation v. Commissioner, 7 T.C. 1276, acquiescence, C.B. 1947–1,3."

4. Int.Rev.Code of 1939, ch. 1, § 112(b)(5), 53 Stat. 37; Revenue Act of 1938, ch. 289, § 112(b)(5), 52 Stat. 485; Revenue Act of 1936, ch. 690, § 112(b)(5), 49 Stat. 1679; Revenue Act of 1934, ch. 277, § 112(b)(5), 48 Stat. 704; Revenue Act of 1932, ch. 209, § 112(b)(5), 47 Stat. 196; Revenue Act of 1928, ch. 852, § 112(b)(5), 45 Stat. 816; Revenue Act of 1926, ch. 27, § 203(b)(4), 44 Stat. 12; Revenue Act of 1924, ch. 234, § 203(b)(4), 43 Stat. 256; Revenue Act of 1921, ch. 136, § 202(c)(3), 42 Stat. 230.

in exchange for stock in which the transferring taxpayers used the reserve method of accounting for bad debts. It was not until the Revenue Ruling that we have quoted that the Commissioner took a published position on the question.[5]

We think that the Tax Court's and the Commissioner's position disregards the economic realities of the situation. Before the transfer of the business, taxpayer owned all of its assets and was obligated to pay all of its liabilities. He was permitted to estimate in advance and charge against income accrued the losses that would be sustained in collecting the accounts receivable instead of waiting until an actual loss was incurred and charging it off as a bad debt. It is conceded that the reserve was reasonable. This means, in economic terms, that the value of the accounts receivable was not their face amount, but that amount less the reserve. It was this value that was transferred to the corporation. The par value of the stock received equalled (within $23.19) the *net*, not the gross value of the business, a net figure derived in part by deducting from the face amount of the receivables the amount of an existing reasonable reserve. It is quite true that the taxpayer no longer "needed" the reserve, but it is certainly not true, in any economic sense, that he has recovered its value. What he has recovered, in relation to the receivables, is pieces of paper—stock certificates—representing their net value, not their gross value.[6]

In Revenue Ruling 62–128, supra, the Commissioner relies upon certain language in the cases that he cites to the effect that the taxpayers did not any longer "need" the reserve. He makes the same contention here. The cases, however, do not go so far.[7]

The Commissioner points out that before the transaction the business was owned by the taxpayer, while after the transaction it was owned by the corporation, a new, separate taxable entity. He contends that a reserve such as one for bad debts is not a transferable "asset" or "liability" of the taxpayer. We need not pass upon this as a matter of accounting. As we have previously explained, as a matter of economics, whether the reserve itself was "transferred" or not, the consideration received by the taxpayer was the value of the receivables less the reserve, not the gross value.

The Commissioner says that the taxpayer, by obtaining for the receivables stock equivalent to their net value, sustained a loss equal to the amount of the reserve, but that the loss is not recognized by reason of the provisions of section 351. Ordinarily, as in case of a sale for cash (see note 6, supra), the loss would offset the "gain" created by the termination of need for the reserve. But not here, says the Commissioner, because the loss is not recognized.

5. The Commissioner's position has produced critical comments, e. g., Arent, "Reallocation of Income and Expenses in Connection with Formation and Liquidation of Corporations," Taxes, Dec. 1962, 995, Hickman, "Incorporation and Capitalization," Taxes, Dec. 1962, p. 974.

6. Surely, if the taxpayer had sold the receivables, for cash, for their net value, he would not have realized income in the amount of the reserve. Yet, just as surely, he would no longer "need" the reserve.

7. In Geyer, Cornell & Newell, Inc., 1946, 6 T.C. 96, the amount of the reserve was actually collected. This is equally true of *West Seattle Nat'l Bank*, supra, and of the other cases upon which the Commissioner principally relies: S. Rossin & Sons, Inc. v. Commissioner, 2 Cir., 1940, 113 F.2d 652, 654; Citizens Fed. Sav. & Loan Co. v. United States, 1961, 290 F.2d 932, 936, 154 Ct.Cl. 305; Arcadia Sav. & Loan Ass'n v. Commissioner, 9 Cir., 1962, 300 F.2d 247. The lack of "need" for the reserve arose from collection (or sale) of the receivables. And, as is illustrated by the foregoing cases, it is generally only to the extent that what is collected represents the reserve, or a part of it, that income is said to be realized. There may be cases, such as a change in accounting methods, where the "realization" is technical, rather than actual (see *Arcadia*, supra, at p. 250), but we think that this case is not one of them.

Thus he creates here what is to us a fictitious income, never received by the taxpayer in fact. We are not impressed. We think that, whether the sale be for cash or stock, no income is received, unless the consideration received exceeds the net amount of the receivables. As we said in *West Seattle Nat'l Bank,* supra, 288 F.2d 47, at 49:

> "Nor does the fact that the bad debt reserve is generally regarded as a valuation reserve affect the result. While the book value established thereby has an accounting significance, it is still based upon an *expectation* that loss of value will occur and not upon the fact that such loss has already occurred. It is a prediction of value and not a statement of present fact. Recovery of a debt which has been written off is not then a realization of a gain in asset value. It simply demonstrates that the value prediction was faulty and did not conform to the fact."

We think that where accounts receivable are sold for cash for less than face value, the difference being the amount of the reserve, the taxpayer does not then "realize" a loss. He "realized" the loss, for tax purposes, when he set up the reserve, and cannot have it twice. The price received merely demonstrates that the estimate of loss was correct. And there is no gain merely because the reserve is no longer "needed;" rather, the correctness of the reserve as an estimate of loss is confirmed. The following cases, while not directly in point, support the result that we reach: Commissioner v. South Lake Farms, Inc., 9 Cir., 1963, 324 F.2d 837, 839–840; Calavo, Inc. v. Commissioner, 9 Cir., 1962, 304 F.2d 650, 652. See also the dictum in *Citizens Fed. Sav. & Loan Co.,* supra, n. 7, 290 F.2d at p. 937.

We do not pass upon the right of the corporation, at the commencement of its business, to set up the same reserve as an offset to the receivables entered upon its books. The only question before us is the liability of the individual taxpayer.

Reversed.