MAX SCHUSTER AND ELSE SCHUSTER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 796-65.  Filed April 17, 1968.

*Leo Sussman,* for the petitioners.
*William T. Hayes,* for the respondent.

OPINION

RAUM, *Judge:* The Commissioner determined a deficiency in petitioners' income tax for the year ended December 31, 1961, in the amount of $7,337.36. Petitioners have agreed to most of the Commissoner's adjustments, and dispute here only the Commissioner's actions with respect to the reserve for bad debts account of a sole proprietorship once operated by petitioner Max Schuster. The entire business of the proprietorship, including its accounts receivable, was transferred to a corporation on October 31, 1961, in a nonrecognizable transaction which qualified under section 351, I.R.C. 1954, and we must determine whether, under these circumstances, the Commissioner acted properly in making an adjustment the effect of which was to disallow a deduction in that year for an addition to the proprietorship's reserve for bad debts account, and to restore the remaining balance in the reserve to petitioners' income. The facts have been stipulated.

The petitioners, Max and Else Schuster, are husband and wife, who now reside and have at all times involved herein resided in New York, N.Y. Petitioners timely filed a joint income tax return for the calendar year 1961 with the district director of internal revenue, Manhattan District, New York.

During the first 10 months of 1961, Max Schuster operated, in the form of a sole proprietorship, a wholesale business in semiprecious and synthetic stones. The principal place of business of the proprietorship was New York, N.Y. At all times involved herein, the individual petitioners employed the cash method of accounting for their personal items of income and deduction and the proprietorship employed the accrual method of accounting for its items of income and deduction. The proprietorship employed the reserve method of accounting for bad debts for Federal income tax purposes.

The balance in the reserve for bad debts account on January 1, 1961, representing deductions taken for estimated bad debt losses in prior

years, was $12,237.51. Adjusting entries to increase the amount of the reserve by $7,432.04, and to write off worthless accounts in the amount of $6,984.15 were made on the proprietorship's books during 1961. The entries to the bad debt reserve account made in 1961, and an audit adjustment made by the examining revenue agent on audit of petitioner's 1960 return, with petitioners' consent, are reflected in the following computation:

| | |
|---|---:|
| Balance at 1/1/61, per books | $12,237.51 |
| Add: Bad debt recoveries in 1961 | 66.86 |
| | 12,304.37 |
| Less: Worthless accounts written off at 10/31/61 | 6,984.15 |
| | 5,320.22 |
| Add: Addition to reserve at 10/31/61 | 7,432.04 |
| Balance per books at 10/31/61 | 12,752.26 |
| Less: Disallowance of addition to reserve, per RAR for 1960 | 1,267.93 |
| Balance at 10/31/61, as adjusted | 11,484.33 |

On October 31, 1961, the books of account of the proprietorship disclosed accounts receivable of $205,740.18 and a bad debt reserve of $12,752.26 (reduced on audit to $11,484.33).

It has been conceded by respondent that, had the proprietorship continued and had its assets and liabilities not been transferred to the Stone House of Max Schuster, Inc., as described below, the balance in the bad debt reserve on October 31, 1961, as adjusted, would have been reasonable in amount.

On or about October 31, 1961, petitioner Max Schuster caused to be organized, under the laws of the State of New York, a corporation entitled Stone House of Max Schuster, Inc. At all times involved herein, the principal place of business of the Stone House of Max Schuster, Inc., was New York, N.Y.

On October 31, 1961, petitioner Max Schuster transferred all of the assets and liabilities of the proprietorship to the Stone House of Max Schuster, Inc., in return for all its capital stock. The transfer met the requirements of section 351 of the Internal Revenue Code of 1954 for nonrecognition of gain or loss. Upon receipt of the assets of the proprietorship, the Stone House of Max Schuster, Inc., set up on its books accounts receivable in the amount of $205,740.18 and a reserve for bad debts in the amount of $12,752.26, and assumed the business activities of the proprietorship without interruption.

The Commissioner has increased petitioners' taxable income for 1961 by $11,484.33, a figure which coincides with the balance, after the audit adjustment agreed to by petitioners, in the proprietorship's reserve for bad debts account on October 31, 1961, when the proprietor-

ship's assets and liabilities were transferred to the Stone House of Max Schuster, Inc. On brief, the Commissioner informs us that this figure reflects two separate adjustments: First, the disallowance of a deduction of $7,432.04 claimed as an addition to the proprietorship's bad debt reserve by petitioners in 1961, and second, restoration to income of the remaining $4,052.29 balance in the proprietorship's bad debt reserve. We uphold the Commissioner's action in both respects.[1]

Exercising the discretion granted him in section 166(c), I.R.C. 1954, the Commissioner has provided that those taxpayers who wish to use the reserve method of accounting for bad debt losses must justify the reasonableness of any additions to the reserve "in the light of facts existing at the close of the taxable year of the proposed addition." Sec. 1.166–4, Income Tax Regs. At the close of 1961, the sole proprietorship operated by Max Schuster had transferred its accounts receivable, together with all its other assets, to a corporation, Stone House of Max Schuster, Inc. There was thus no prospect of any bad debt losses being incurred by the proprietorship in future years, since the proprietorship had no accounts which might become worthless nor indeed any business which might generate such accounts at the end of 1961. A deduction for an addition to a bad debt reserve under these circumstances was clearly unreasonable, and the $7,432.04 addition to the reserve claimed by petitioners was properly disallowed as a deduction by the Commissioner. See *Bird Management, Inc.*, 48 T.C. 586, 594–595. Any deduction for an addition to the reserve for bad debts may properly be made as of the end of the year by the successor corporation to its own reserve, not by petitioner who individually will never sustain any bad debt loss in respect of any debts giving rise to such addition.

Similarly, we think the Commissioner was correct in restoring to petitioners' income the remaining balance in the proprietorship's reserve for bad debts account, $4,052.29, representing deductions for estimated bad debt losses taken in prior years but never written off against actual worthless accounts. We have long held that a reserve for bad debts must be restored to income when events make the reserve no longer necessary, *Geyer, Cornell & Newell, Inc.*, 6 T.C. 96. Certainly, this occurred when Max Schuster terminated the activities of the proprietorship by transferring all its assets, subject to its liabilities, to the Stone House of Max Schuster, Inc. It is clear that *he* would never

---

[1] Contrary to the requirement of our Rule 7(c)(4)(E), petitioners have failed to attach to their petition the Commissioner's statement accompanying the deficiency notice which would disclose the precise nature of the Commissioner's adjustments. In any event, regardless of the grounds set forth in the Commissioner's statement, it is well established that a deficiency may be approved for reasons other than those relied upon by the Commissioner or indeed even where his reasons may be wrong. See *Wilkes-Barre Carriage Co.*, 39 T.C. 839, and cases cited at p. 845, affirmed 332 F. 2d 421 (C.A. 2).

thereafter sustain any bad debt losses in respect of the debts thus transferred.

The resulting inclusion of the reserve in his gross income is required by proper accounting principles. A reserve for bad debts is merely a *forecast* of possible future bad debt losses, and under the reserve method of accounting for bad debts a taxpayer is permitted to deduct his anticipated bad debts through an addition to the reserve, notwithstanding that the loss has not yet in fact been sustained. Accordingly, if the taxpayer should dispose of his accounts receivable or if it should otherwise be established that *he* will never in fact sustain any bad debt loss in respect of the debts in question, consistent accounting practice requires that the amount previously deducted be restored to income. See *J. E. Hawes Corp.*, 44 T.C. 705, 707.

Nor is it a matter of consequence that in disposing of the accounts receivable the taxpayer realized a loss or that he transferred the accounts receivable in a nontaxable transaction. If the taxpayer sustained any loss upon such disposition, the proper tax treatment thereof depends upon specific provisions of the Code. Thus, if there is a loss upon sale, that loss, whether it be a capital loss or some other kind of loss, will be taken into account "to the extent that and subject to such limitations as the Code prescribes for such losses." *Bird Management, Inc.*, 48 T.C. at 597. But such sale cannot itself be treated as the realization of a bad debt loss,[2] and the bad debt deduction which had previously been taken through the medium of an addition to the reserve must be restored to income. The matter was discussed in detail in *J. E. Hawes Corp.*, 44 T.C. 705, 708–709, and we quoted extensively therefrom in our opinion in *Bird Management, Inc.*

The identical reasoning applies in the case of a nonrecognizable or tax-free transfer of the accounts receivable. The critical fact is that the taxpayer, by disposing of the accounts receivable, will never sustain a bad debt loss in respect thereof, and the deduction which he has previously taken for such anticipated loss must therefore be restored to income. Cf. *West Seattle National Bank of Seattle*, 33 T.C. 341, affirmed 288 F. 2d 47 (C.A. 9). We reached the same result in *Estate of Heinz Schmidt*, 42 T.C. 1130, where a sole proprietor similarly transferred his business in a nonrecognizable transaction to a wholly owned corporation, but our decision was reversed on appeal. 355 F. 2d 111 (C.A. 9). The Court of Appeals held that a bad debt reserve may not be added back to income unless the creditor has "received" consideration on the disposition sufficient to cover the bad debt reserve. But, as we subsequently pointed out in *Bird Management, Inc.* (48 T.C. at 597) :

---

[2] Cf. *Maurice Levy*, 46 B.T.A. 423, 425–426, affirmed 131 F. 2d 544 (C.A. 2), certiorari denied 318 U.S. 780 ; *Benedum* v. *Granger*, 180 F. 2d 564, 566 (C.A. 3), *Von Hoffmann Corp.* v. *Commissioner*, 253 F. 2d 828 (C.A. 8), affirming a Memorandum Opinion of this Court, *Wachovia Bank & Trust Co.* v. *United States*, 288 F. 2d 750, 757–758 (C.A. 4).

we think the Court of Appeals has misconceived the theory that calls for the inclusion of the bad debt reserve in income. It is not that the creditor has "received" something or has "realized" income in the usual sense. Rather, it is an accounting concept that one who has taken a deduction for bad debts in earlier years by reason of his method of accounting, must, in accordance with that method of accounting, restore that deduction to income in a later year when it becomes clear that no bad debt loss will occur. If a different type of loss should occur, as a result of sale, that loss would then be deductible to the extent that and subject to such limitations as the Code prescribes for such losses.

The mere fact that the new owner of the accounts receivable will require a bad debt reserve in the same amount as its predecessor is irrelevant. There is no provision whatever in the law that permits a a carryover of a bad debt reserve from the former owner to his transferee corporation in a nonrecognizable transaction governed by section 351, regardless of whether the corporation may have similar need for the reserve. If the corporation is to continue the same method of accounting previously employed by its predecessor, it must itself establish such reserve on its books. But so far as the transferor is concerned, he has parted with the accounts receivable in respect of which he has previously taken a deduction for anticpated bad debt losses that he will in fact never sustain. In such circumstances, consistent accounting practice demands that the amounts previously deducted be added back to income. Should the corporation suffer the bad debt losses, it will be entitled to tax benefits therefor, either through additions to its own reserve or through deductions for bad debts when the losses are actually sustained if it should decide not to maintain a bad debt reserve. But, we repeat, there is nothing in the statute requiring or permitting a carryover of the bad debt reserve to the new corporation, and when the taxpayer's need therefor has ceased, he must restore the balance in the reserve to income. The Code is a highly complex instrument, and it would be inappropriate, in order to reach a seemingly equitable result, to proceed upon theories that depart from an established course of decision or that do violence to the statute. In a field that is governed by so specific a statutory scheme relating to nonrecognizable transfers,[3] any logical departure therefrom must be based on specific legislative modifications. The remedy is one that must be provided by Congress, rather than through a judicial reconstruction of a complex law.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

[3] Sec. 381 sets forth a detailed set of rules for carryovers in respect of a wide variety of items in certain nonrecognizable transactions, such as net operating losses, earnings and profits, methods of accounting, inventories, methods of computing depreciation, and a number of others. See *Estate of Bernard H. Stauffer*, 48 T.C. 277, 296–297. But these provisions are specifically limited to transactions that do not include transfers governed by sec. 351, and we know of no other ground under existing law that would require or permit the carryover of a bad debt reserve in a sec. 351 transaction.

DAWSON, *J.*, dissenting: I respectfully disagree with the conclusion reached by the majority. It is not only inequitable but also inconsistent with the legislative history behind section 351 and its predecessors. See H. Rept. No. 350, 67th Cong., 1st Sess., p. 10 (1921) ; S. Rept. No. 275, 67th Cong., 1st Sess., p 11 (1921) ; and *Helvering* v. *Cement Investors*, 316 U.S. 527 (1942). Instead, I agree with the holding of the Ninth Circuit, reversing 42 T.C. 1130, in *Estate of Schmidt* v. *Commissioner*, 355 F. 2d 111 (C.A. 9, 1966).

FEATHERSTON, *J.*, agrees with this dissenting opinion.

---

SIMPSON, *J.*, dissenting: I must dissent from the conclusion of the majority. In my opinion, this holding unnecessarily distorts income of the transferred business. I would avoid such consequences by holding that the bad debt reserve of the proprietorship is "carried over" to the corporation.

The majority concludes that since the individual taxpayer had no further need for the bad debt reserve, he must return to income the amount of the reserve previously deducted by him but not used. However, the business will continue, and the corporate transferee will be entitled to elect to establish its own bad debt reserve and deduct the additions to it. Thus, because of the transfer of the business to the corporation, the individual taxpayer is taxed on the unused reserve, but the corporate transferee will be allowed to establish and deduct its reserve. Such consequences distort the income of the business.

The holding of the majority is inconsistent with the purpose of section 351 which is to allow the incorporation of unincorporated businesses without tax consequences. In the case of a transfer of property to a corporation solely for stock or securities, gain is not taxed, and the basis of the property is carried over to the transferee corporation. Secs. 351 and 362. A transfer under section 351 does not trigger the recapture provisions relating to the investment credit, nor the recapture provisions relating to excess depreciation. Secs. 47(b), 1245(b) (3), and 1250(d)(3).

The majority considers that the lack of a specific statutory authorization precludes us from allowing a carryover of the bad debt reserve in a section 351 transfer. However, without specific statutory authority, the carryover of tax attributes from one legal person to another in some cases was allowed prior to the enactment of section 381. *Helvering* v. *Metro. Edison Co.*, 306 U.S. 522 (1939) ; *Commissioner* v. *Sansome*, 60 F. 2d 931 (C.A. 2, 1932).[1] Moreover, although section 381 con-

---

[1] Of course, I am also aware that the courts have denied a carryover in other cases, e.g., *Libson Shops, Inc.* v. *Koehler*, 353 U.S. 382 (1957) ; *New Colonial Co.* v. *Helvering*, 292 U.S. 435 (1934). However, the point is that courts have allowed carryovers in some situations.

tains extensive rules regarding carryovers in some transactions, Congress made clear that section 381 was not to be exclusive. S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 276–277 (1954), and H. Rept. No. 1337, 83d Cong., 2d Sess., p. A135 (1954), to accompany H.R. 8300 (Pub. L. 591). See also sec. 1.381(a)–1(b)(3), Income Tax Regs. In addition, without specific statutory authorization, the regulations provide that the transfer of an installment obligation in a transaction under section 351 is not a disposition of the obligation for purposes of section 453 (d). Sec. 1.453–9(c)(2), Income Tax Regs.

To avoid distorting the income of the business and to carry out the purpose of section 351, I would hold that the transferor's unused bad debt reserve is carried over to the transferee corporation. As a result, the transferor would not be taxed on the unused reserve, and the transferee would not be allowed a deduction for building up a reserve. The transferee would stand in the shoes of the transferor so that the corporation would be required to continue to use the reserve method for treating bad debts, unless it secured the approval of the Commissioner to change such method.