ROBERT P. AND MARGUERITE C. HUTTON, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1990–68.    Filed October 13, 1969.

*Carl M. Siegel,* for the petitioners.
*Charles S. Stroad,* for the respondent.

OPINION

TIETJENS, *Judge:* The Commissioner determined a deficiency in petitioners' Federal income tax for the taxable year 1964 in the amount of $17,968.80. The only issue presented is whether petitioners were required, upon the transfer of all the assets and liabilities of a sole proprietorship to a controlled corporation under section 351, I.R.C. 1954,[1] to include as taxable income for that year, $38,904.12, which represents the balance of two reserves for bad debts at the date of the transfer.

All of the facts have been stipulated and the case has been submitted under Rule 30. The stipulations and the exhibits attached thereto are incorporated herein by this reference.

Robert P. Hutton and Marguerite C. Hutton (hereinafter referred to as petitioner and Marguerite or petitioners) are husband and wife whose legal residence at the time they filed their petition herein was Detroit, Mich.

Petitioners are calendar year taxpayers using the cash basis of accounting. They filed a joint individual income tax return for the calendar year 1964 with the district director of internal revenue, Detroit, Mich. Marguerite is a party herein solely by virtue of having joined with petitioner in filing the joint individual income tax return.

During 1964 and for several years prior thereto, petitioner owned and operated the East Detroit Loan Co. (hereinafter referred to as East Detroit), as a sole proprietorship. East Detroit kept its books on the cash basis of accounting, and was engaged in the business of making small loans and purchasing installment sales contracts.

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.

In computing their taxable income petitioners availed themselves of section 166(c), I.R.C. 1954, relating to the reserve method of accounting for bad debts and over the years have taken deductions for additions to two reserves for bad debts. Subsequent collections, if any, of accounts written off were included in income in the year of collection. The activity in the reserves from January 1, 1964, to June 30, 1964, was:

| | |
|---|---|
| Balance—Jan. 1, 1964 | $37,797.01 |
| Less: Worthless accounts written off as of June 30, 1964 | 12,850.39 |
| | 24,946.62 |
| Plus: Addition to reserve as of June 30, 1964 | 13,957.50 |
| Balance—June 30, 1964 | 38,904.12 |

On July 1, 1964, all of the assets including loans receivable and installment sales contracts, with a face value of $972,604.22, and all the liabilities of East Detroit, were transferred to the East Detroit Loan Co. (hereinafter referred to as the corporation), a newly formed Michigan corporation, solely in exchange for stock of such corporation pursuant to section 351. All of such stock was issued to the petitioner.

On July 1, 1964, the corporation set up a reserve for bad debts in the total amount of $38,904.12 and made a corresponding adjustment to its capital account.

Since the transfer on July 1, 1964, the corporation has continued the business operations of East Detroit without interruption.

The Commissioner determined that upon the transfer under section 351 the balance in East Detroit's reserve for bad debts of $38,904.12 was includable in petitioners' gross income for taxable year 1964 and thereby a deficiency existed in the amount of $17,968.80.

We must decide whether the balance in East Detroit's reserve for bad debts was includable in petitioners' taxable income for taxable year 1964 or whether, by virtue of section 351, no taxable income was required to be reported upon the transfer to the controlled corporation.

We are informed by the Commissioner, on brief, that the above amount represents two separate but closely related adjustments. First, the disallowance of a deduction for the claimed addition to the reserves as of June 30, 1964, in the amount of $13,957.50, and second, restoration of the balance of the bad debt reserves (after the above adjustment) in the amount of $24,946.62 to petitioners' taxable income for taxable year 1964. We agree with the actions of the Commissioner in both respects.

As concerns the first adjustment, section 166(a) provides that "There shall be allowed as a deduction any debt which becomes worthless within the taxable year." However, in recognition of generally accepted accounting principles, the Code in section 166(c) also provides that "in

the discretion of the Secretary or his delegate" a taxpayer shall be allowed a "deduction for a reasonable addition to a reserve for bad debts." In exercise of the discretion granted, section 1.166–4, Income Tax Regs., sets forth the conditions under which deductions for additions to a reserve for bad debts may be taken:

(b) *Reasonableness of addition to reserve*—(1) *Relevant factors.* What constitutes a reasonable addition to a reserve for bad debts shall be determined in the light of the facts existing *at the close of the taxable year of the proposed addition.* * * * [Emphasis supplied.]

Thus it is clear that any addition to a reserve for bad debts is to be made as of the end of the taxable year. In the instant case, at the end of taxable year 1964, petitioners had no loans receivable or installment sales contracts outstanding due to the earlier transfer to the corporation under section 351. Therefore since petitioners no longer owned any accounts, there was no future possibility of any bad debt losses arising therefrom. Hence any addition by petitioners to a reserve for bad debts at the close of the taxable year would be clearly unwarranted and contrary to the regulations. Similarly the addition to the reserve as of June 30, 1964, is also unwarranted in that such date is not the end of the taxable year, as specified in the regulations. Any future bad debt losses would be those of the corporation and not of the petitioners, and it would be for the corporation to make any additions to the reserve at the end of its taxable year. *Max Schuster*, 50 T.C. 98 (1968); *Bird Management, Inc.*, 48 T.C. 586, 594–595 (1967), and cases cited therein. Accordingly, the Commissioner's action regarding the addition to the reserve for bad debts is upheld.

Turning to the second adjustment, it is well settled that whenever the balance in a reserve for bad debts will no longer be needed, such balance is to be restored to income in the year the need for it ceases to exist. *Max Schuster, supra; Bird Management, Inc., supra; J. E. Hawes Corp.*, 44 T.C. 705 (1965), and cases cited therein.

A reserve is not an asset or a liability, rather it is a contra account, a medium of disclosure and as such it has no existence aside from the asset it offsets. A reserve is *an estimate* of possible future uncollectibility and as such serves to reduce present income. When it becomes apparent that such estimated losses will never in fact be sustained, good accounting practice requires that any unused balance in such a reserve be restored to income. *Max Schuster, supra; Geyer, Cornell & Newell, Inc.*, 6 T.C. 96 (1946).

Petitioners, over the years, have enjoyed a tax benefit by virtue of their accounting practice and it is only proper that this benefit now be restored since the factors occasioning it have ceased to be operative. When the petitioners transferred all of the assets and liabilities of the sole proprietorship to the corporation under section 351, they pre-

cluded themselves from sustaining any future bad debt losses. Thus the need for a reserve for bad debts ceased to exist insofar as the petitioners were concerned and we see no valid reason why they should not be required now to include the unabsorbed balance of the reserves in income.

This result does no violence to section 351 and its provision as to nonrecognition of gain or loss, as petitioner argues. As was said in *Estate of Heinz Schmidt*, 42 T.C. 1130, 1135, revd. 355 F. 2d 111 (C.A. 9, 1966) :

The income here in question is * * * not gain upon the transfer of assets. Rather, this case * * * involves amounts of income realized under the taxpayers' system of accounting *prior* to the transfer, income which had been relieved of tax by reason of offsetting bookkeeping entries * * *

Although *Schmidt* was reversed on appeal, 355 F. 2d 111, we noted in connection therewith in *Bird Management, Inc.*, 48 T.C. 586, 597, that :

we think the Court of Appeals has misconceived the theory that calls for inclusion of the bad debt reserve in income * * * [the reason] is an accounting concept that one who has taken a deduction for bad debts in earlier years by reason of his method of accounting, must, in accordance with that method of accounting, restore that deduction to income in a later year when it becomes clear that no bad debt loss will occur. * * *

In *Schmidt*, the Court of Appeals characterized the Commissioner's determination of taxable income resulting from the cessation of the need for the reserve as "fictitious income, never received by the taxpayer in fact." 355 F.2d at 114. In the instant case, such a characterization is not valid. Petitioner maintained the books of the sole proprietorship on the cash basis of accounting; all income reported in any given taxable year was in fact received. Under the cash basis there is no possibility of a presently reported item of income becoming uncollectible in the future; all income, to be reported, must in fact be collected and received. Petitioners have used the reserve method of accounting for bad debts to lessen their tax burden on income in hand received. The Commissioner's actions merely restore such in hand income to its appropriate status; we do not create income that was not in fact there.

Petitioner argues that the result we reach will distort the income of both himself and the corporation. We cannot agree.

As for the petitioner, what we decide today is that he is now required to restore his prior tax benefits enjoyed by virtue of his method of accounting. We are not creating income; rather, we are restoring previously untaxed income to its proper character.

As concerns the corporation, our decision produces no distortion. Upon the transfer pursuant to section 351, the corporation and not petitioners became the owner of the assets, including loans receivable and installment sales contracts, with an aggregate face value of $972,-

604.22. The corporation's need for a reserve for bad debts as of its inception had not been established, it had no history of uncollectible accounts. It was not incumbent upon the corporation to set up a reserve immediately or at all. As we stated in *Max Schuster*, 50 T.C. 98, 102:

There is no provision whatever in the law that permits a carryover of a bad debt reserve * * * in a nonrecognizable transaction governed by section 351, regardless of whether the corporation may have similar need for the reserve. * * * the corporation * * * must itself establish such [a] reserve * * * Should the corporation suffer the bad debt losses, it will be entitled to the tax benefits therefor, either through additions to its own reserve or through deductions for bad debts when the losses are actually sustained * * *

Although establishing a reserve immediately after the transfer, in the same amount as were the balances in the reserves of the sole proprietorship, necessitates a corresponding adjusting entry, which gives the corporation the appearance of beginning operations with a loss, the true state of the corporation's affairs will not emerge until the end of the next accounting period, for, as petitioner correctly states: "Accounting theory dictates that revenues and expenses be matched for each period." It is the end of any given accounting period that is significant, not the beginning.

Finally we note with approval the decision of the Fifth Circuit in *Nash* v. *U.S.*, 414 F. 2d 627 (C.A. 5, 1969), based on our decision in *Max Schuster, supra*, involving the transfer by a partnership to certain controlled corporations under section 351, wherein the Court of Appeals makes the following observation, equally applicable here:

the deductions from income by the individual transferors as they annually set aside additions to the reserve resulted in lessening of the tax at individual rates, whereas the ultimate tax paid on any part of the reserve later determined not to be needed by the corporation or upon its decision to abandon the reserve method of accounting will be taxed at corporate rates. This would not be a mere postponement of the incidence of the tax; there would also be a change of identity of the taxpayer.

We uphold the Commissioner's determination that petitioners are required to report as taxable income the unabsorbed balance in reserves for bad debts when upon the transfer to a corporation under section 351, the need for such reserves by the petitioners ceased to exist.

*Decision will be entered for the respondent.*