## ASSOCIATED MACHINE (FORMERLY ASSOCIATED MACHINE SHOP), A CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5177–65.    Filed June 15, 1967.

*Jerry Kasner*, for the petitioner.

*Leo A. McLaughlin*, for the respondent.

HARRON, *Judge:* This case involves the 1959 income tax liability of a California corporation known as Associated Machine Shop. Its return for 1959 disclosed taxable income in the amount of $142,655.06. In 1960, Associated Machine Shop was merged into another California corporation, J & M Engineering, which simultaneously changed its name to Associated Machine, the petitioner here. In 1962, Associated Machine sustained a net operating loss. The respondent tentatively allowed, but later disallowed, the carryback of Associated Machine's 1962 loss of $82,863.30 to reduce the 1959 income of the former corporation, Associated Machine Shop. Since respondent's tentative allowance of the claimed carryback of the loss resulted in a tax refund to Associated Machine, successor to Associated Machine Shop, his subsequent disallowance of the loss carryback resulted in a deficiency of $43,088.91 in the income tax liability of Associated Machine, the successor to Associated Machine Shop.

The sole issue is whether a deduction for 1959, for a carryback of a net operating loss of the Associated Machine corporation is or is not allowable under the provisions of section 381, 1954 Code, which, under certain circumstances, prohibits the carryback of a net operating loss. The narrow question is whether the merger in 1960 of Associated Machine Shop into the petitioner corporation (formerly J & M Engineering Corp.) came within the provisions of subparagraph (F) of section 368(a)(1), so as also to come within the provisions of section 381(b).

## FINDINGS OF FACT

The stipulated facts are so found and are incorporated herein by reference.

The petitioner corporation, Associated Machine, filed its return for 1962 with the district director of internal revenue in San Francisco, Calif. The former corporation, Associated Machine Shop, filed its return for 1959 with the district director of internal revenue in San Francisco.

For the purposes of clarity and convenience, the corporation whose income tax liability for 1959 is at issue here is referred to throughout as Associated Machine Shop, its then corporate name, or as Machine Shop. The corporation into which Associated Machine Shop was merged in 1960 is referred to hereinafter as Associated Machine (formerly J & M Engineering). The petitioner's present name is "Associated Machine," but since the 1960 merger of the two California corporations is involved, it is necessary to refer to each corporation by the above names.

*Associated Machine Shop, a Corporation.*—The business to which Associated Machine Shop succeeded was carried on originally by a partnership created on January 1, 1951, consisting of three partners, which later, in 1958, was conducted as a sole proprietorship. The three equal partners were Joseph, Frank, and John Schiavo. Joseph acquired, in May 1958, all of the interests of Frank and John and thereafter operated as a sole proprietor. Both the partnership and the proprietorship conducted business under the name "Associated Machine Shop."

On September 10, 1958, a California corporation was organized under the same name. All of its issued stock, 503 shares of common stock having a par value of $100 per share, was issued to Joseph Schiavo, who continued thereafter to be the sole stockholder. The corporation acquired and carried on the business formerly conducted by the sole proprietorship. However, only certain assets of the proprietorship were transferred to the corporation in exchange for the 503 shares of stock, namely, work in process, accounts receivable, small tools, automobiles, and office equipment. Joseph retained the ownership of the land and building (where the business was operated) at 1061 Richard Street, Santa Clara, Calif. as well as the major equipment and machinery; he leased the building, machinery, and equipment to the corporation under a written lease.

Associated Machine Shop, the corporation, kept its books and reported its income on the basis of a calendar year and employed an accrual method of accounting.

The officers of Associated Machine Shop were: Joseph Schiavo, president; Marcella Schiavo, vice president; and Fred Abildgaard, secretary-treasurer. All of the officers were directors.

At the time of its incorporation and thereafter the principal business of Associated Machine Shop was the operation of a general machine shop business. More particularly, it fabricated by machining processes metal parts for use in the manufacture of aircraft, missiles, and computers.

In its return for 1959, Associated Machine Shop reported the following amounts of gross receipts, gross profit, deductions, and taxable income:

|  | 1959 |
| --- | --- |
| Gross receipts | $748,449.01 |
| Cost of goods sold | 333,286.72 |
| Gross profit | $415,162.29 |
| Total deductions | 281,541.35 |
| Taxable income | 133,620.94 |

The respondent adjusted the amount of the taxable income for 1959, upon audit, to $142,655.06, about which there is no dispute here.

In the spring of 1959, Associated Machine Shop moved from 1061 Richard Street to a building located at 2222 Ronald Street in Santa Clara. The properties located at 2218 and 2222 Ronald Street were owned by Joseph Schiavo. He leased 2222 Ronald Street to Associated Machine Shop.

Associated Machine Shop's customers in 1960 included the following: IBM, Lockheed, Dumont, Aerojet-General, and Food Machinery Corp. The following list shows, for the period January 1 to November 30, 1960, the customers and the respective amounts of Machine Shop's sales to each customer:

| Customers | Amount of sales | Customers | Amount of sales |
|---|---|---|---|
| Bel Air | $186.20 | Dumont | $14,942.00 |
| IBM | 130,402.83 | Food Machinery Corp | 26,546.92 |
| Linco | 6,652.06 | J & M Engineering | 9,900.76 |
| Aetna Machine | 907.04 | Lenkurt | 967.50 |
| Lockheed | 255,992.40 | Monsanto | 2,430.52 |
| University of California | 5,332.00 | Norton | 636.58 |
| Aerojet-General | 283,866.67 | Scandia | 18,129.45 |
| Miscellaneous | 8,338.46 | United Tech | 33,663.73 |
| Nucleonics | 12,982.83 | | |

*J & M Engineering, a Corporation.*—Joseph Schiavo organized another California corporation on December 14, 1959, J & M Engineering. The primary purpose was to have J & M conduct a sheet metal fabrication business, which, for example, consisted of making cabinets and other such items out of sheet metal. All of its issued stock, 50 shares of common stock having a par value of $100 per share, was issued to Joseph. The officers and directors at all times were Joseph, president, Marcella Schiavo, vice president, and F. Abildgaard, secretary-treasurer. J & M reported its income on the basis of a fiscal year from December 1 to November 30. Its first taxable period began on December 14, 1959.

On November 30, 1960, Associated Machine Shop was merged into J & M Engineering.

Joseph constructed, in the spring of 1960, a building at 2218 Ronald Street, Santa Clara, on land owned by him. This property is adjacent to the property where the plant of Associated Machine Shop was located. Joseph leased the building to J & M; and he also leased to J & M sheet metal fabrication equipment consisting of heliarc equipment, rolls, brakes, punch presses, and shears. In order to use up space in the new building at 2218 Ronald Street, Associated Machine Shop leased to J & M some of the pieces of machine shop equipment which Joseph had leased to Machine Shop.

J & M began production in the spring of 1960. Its sheetmetal business was directed to producing cabinetry for companies that built computers. During its first taxable period, ending November 30, 1960, about 25 percent of J & M's business was derived from sheetmetal

fabrication. In operating its sheetmetal business, J & M hired trained individuals and a foreman to take charge of the sheetmetal operations.

During the period December 14, 1959, to November 30, 1960, both Machine Shop and J & M maintained separate bookkeeping and accounting records. During the same period, Machine Shop and J & M purchased materials, supplies, and services in their respective names and capacities, and paid for them with their own funds. During the same period, Machine Shop and J & M held separate shareholders and directors meetings; each corporation had its own separate employees; and each corporation contracted with its own customers.

At various times, Machine Shop and J & M would work on the same job order, and when that was done, an allocation of costs, including labor, was made between the two corporations for both accounting and billing purposes.

At all times, J & M and Machine Shop maintained its own separate corporate seal, minute book, stock register book, and bank account.

From the time of its incorporation until its merger with J & M on November 30, 1960, Machine Shop was engaged in the active conduct of its own separate business. During the period December 14, 1959, to November 30, 1960, J & M was engaged in the active conduct of its own separate business.

The customers of J & M from December 14, 1959, to November 30, 1960, and its sales to them were as follows:

| Customers | Amount of sales |
| --- | --- |
| Associated Machine Shop | $116, 794. 42 |
| Bel Air | 34, 411. 62 |
| IBM | 56, 933. 93 |
| Linco | 5, 295. 55 |
| Aetna Machine | 38. 76 |
| Lockheed | 12, 000. 40 |
| University of California | 11, 998. 00 |
| Aerojet-General | 6, 666. 66 |
| Peter Kewitt Co. | 8, 105. 01 |
| Miscellaneous | 378. 64 |

In its income tax return for the period December 14, 1959, to November 30, 1960, J & M reported gross receipts, deductions, and a loss, as follows:

| | |
| --- | --- |
| Gross receipts | $247, 193. 78 |
| Cost, goods sold | 166, 980. 59 |
| Gross profit | $80, 213. 14 |
| Less: Deductions | 80, 314. 84 |
| Operating loss | 101. 70 |

*The Merger of Machine Shop into J & M*—On November 5, 1960, Joseph and F. Abildgaard, as the officers of J & M and Machine Shop, respectively, pursuant to the authority of the directors and the sole stockholder of each corporation, entered into a written agreement for each corporation which provided, *inter alia*, for the merger of Machine Shop into J & M. It was provided in this agreement that J & M would be the surviving corporation and that Machine Shop would be the disappearing corporation, and that the effective date of the merger would be the date of the filing of the executed merger agreement with the secretary of state of California; and that as of the effective date of the merger, the name of the J & M Engineering corporation would be changed to Associated Machine (without the word "Shop"); and that the articles of incorporation of J & M would be so amended. This merger was to be effected under section 4100 *et seq.* of the California Corporation Code. As part of the proceedings, Joseph and Abildgaard, as officers, filed under Cal. Corp. Code sec. 4113, an application for a permit to issue stock in exchange for stock on November 5, 1960, with the Division of Corporations of California, along with the executed merger agreement, and the financial statement of each corporation.

On November 21, 1960, the commissioner of corporations certified, under section 4113, that in his opinion a permit was not required under the Corporate Securities Law in the matter of the proposed merger between Machine Shop and J & M. The merger became effective on December 1, 1960. Pursuant to the agreement, J & M changed its name to Associated Machine.

The merger of Machine Shop into J & M was effected by J & M's issuance of 503 shares of its authorized common stock, $100 par value per share, in exchange for all of the outstanding 503 shares of common stock of Machine Shop, at the rate of 1 share for 1 share.

Subsequent to the merger, Associated Machine (formerly J & M) continued to operate both a general machine shop business and a sheet-metal fabrication business.

For income tax purposes, J & M, and later Associated Machine, employed an accrual method of accounting.

In its final income tax return, for the period January 1 to November 30, 1960, Associated Machine Shop showed income of $26,790.66. In 1962, respondent audited both Machine Shop's final tax return, and J & M's tax return for the period December 14, 1959, to November 30, 1960, and made an agreed allocation of $3,540 of expenses claimed by Machine Shop on its return, to J & M, pursuant to section 482, 1954 Code. The $3,540 allocation increased J & M's loss for the period ending November 30, 1960, from $101.70 to $3,641.70. Associated Machine

(formerly J & M) carried this loss of $3,641.70 forward as a carryover of a net operating loss deduction on its return for the fiscal year ended November 30, 1961; respondent allowed this loss carryover deduction.

For its fiscal year ended November 30, 1962, petitioner (formerly J & M) reported a loss of $82,863.30.

On February 18, 1963, Associated Machine (formerly J & M), the petitioner, filed an "Application for Tentative Carryback Adjustment," carrying back the $82,863.30 loss for its fiscal year ended November 30, 1962, to offset Associated Machine Shop's taxable income, as adjusted, for the calendar year 1959. On this application, petitioner noted, "Associated Machine Shop merged with Associated Machine 11-30-60. This application is being filed by Associated Machine, but the carryback pertains to Associated Machine Shop for the calendar year 1959."

On March 12, 1963, respondent allowed the tentative carryback adjustment in the full amount claimed, and he refunded $43,088.91, plus interest, to the petitioner, Associated Machine.

In his statutory notice of deficiency (from which this case arose), dated June 2, 1965, the respondent determined that the net operating loss of Associated Machine, (which actually was J & M Engineering before its corporate name was changed to Associated Machine), for the fiscal year ended November 30, 1962, in the amount of $82,863.30, (which respondent had allowed tentatively as a loss carryback), could "not be carried back and applied against the premerger income of Associated Machine Shop" for its calendar year 1959. Respondent disallowed the claimed deduction for an operating loss carryback to 1959, and the income tax deficiency for 1959, in respect to the premerger income of Machine Shop, was the result of the final determination, namely, a tax deficiency of $43,088.91 for 1959, which is in issue here. Respondent addressed his statutory deficiency notice, as follows, "Associated Machine (Formerly Associated Machine Shop)." That designation meant that the deficiency related to the premerger income of Associated Machine Shop for its taxable period, the 1959 calendar year. J & M Engineering Corp. was the former name of the petitioner, Associated Machine.

OPINION

The parties are agreed that the merger of Associated Machine Shop into J & M Engineering in 1960 qualified as a tax-free reorganization under section 368(a)(1)(A), 1954 Code; it was a statutory merger within section 4100 of the California Corporation Code. The question is whether the "reorganization" represented and involved "a mere change in identity, form, or place of organization" within the mean-

ing of section 368(a)(1)(F).[1] The respondent determined and contends that the merger involved changes in the structure of more than one corporation (two corporations were merged) and, therefore, the merger does not qualify as a subparagraph (F) reorganization.

The plain purport of the petitioner's claim is this: If it is held that the reorganization comes within subparagraph (F) of section 368(a) (1), the net operating loss in 1962 of Associated Machine (formerly J & M Engineering) in the amount of $82,863.30 will be carried back as an offset, or deduction, against the taxable income of the other corporation in the reorganization, Associated Machine Shop, for 1959, which amounted to $142,655.06, as adjusted. Although the name of the petitioner was formerly J & M Engineering, and its present name is Associated Machine, it must be kept in mind that the petitioner (formerly J & M) originally was a separate corporation from the other corporation having the closely similar name "Associated Machine Shop." The latter corporation was the "disappearing" corporation, and J & M Engineering (now called Associated Machine), the petitioner, was the "surviving" corporation. Associated Machine *Shop* was organized on September 10, 1958; J & M Engineering was organized on December 14, 1959; after the statutory merger of these two corporations on November 30, 1960, the name of J & M was changed to Associated Machine (without the word "Shop"), but in order to keep the two original corporations separate (in thought), in considering the issue, it may be said that the problem in this case relates to the merger of *Associated Machine Shop* into J & M Engineering.

Section 172 specifically permits the carryover and carryback of net operating loss. In continuing the provision for the carryover and carryback of net operating loss in the 1954 Code, the Congress for the first time made provisions for extending this privilege where there has been a change in entities. Thus, section 381 authorizes the carryover of 22 identified items (including net operating losses) of a transferor corporation in certain tax-free reorganizations, including statutory mergers. However, the Congress also provided that the surviving corporation in the described reorganizations in section 381(b), is not entitled to carry back a postreorganization net operating loss to a prereorganization year of the disappearing or transferor corporation. The exception to this statutory scheme is "an acquisition in connection with a reorganization described in subparagraph (F) of section

---

[1] SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.

    (a) REORGANIZATION.—

        (1) IN GENERAL.—For purposes of parts I and II and this part, the term "reorganization" means—

            (A) a statutory merger or consolidation;

          *        *        *        *        *        *        *

            (F) a mere change in identity, form, or place of organization, however effected.

368(a)(1)" sometimes called "an (F) reorganization." See sec. 381(b). See also *Newmarket Manufacturing Co.* v. *United States*, 233 F. 2d 493 (C.A. 1, 1956); and *Long Corporation* v. *United States*, 298 F. 2d 450 (Ct. Cl. 1962). Stated simply, in the case of an (F) reorganization, the acquiring corporation is not subject to the restrictions of section 381(b), and it may carry back, under section 172(b), section 381(b), and the regulations thereunder, a net operating loss for a taxable year ending after the reorganization to a taxable year of the transferor corporation ending before the reorganization.

Petitioner contends that it is the acquiring corporation in an (F) reorganization and that it may carry back its loss for its taxable year ended November 30, 1962, in computing Associated Machine *Shop's* taxable income for 1959.

Respondent contends that petitioner's basic premise is incorrect, namely that the merger of Shop into J & M (the petitioner) constituted an (F) reorganization. Respondent contends that Shop and J & M were two active brother-sister corporations and that a statutory merger of two active brother-sister corporations does not come within the scope of "A mere change in identity, form, or place of organization, however effected," as set forth in subparagraph (F). Stated differently, it is respondent's understanding of the wording of subparagraph (F) that it envisions a corporate rearrangement involving changes in the structure of only one corporation—a transaction where both prior to and after the reorganization there is only one corporation. Respondent points out that in this case, prior to the 1960 merger, there were two corporations present, each one being actively engaged in the conduct of its own separate business, and each having its own separate assets and liabilities.

We agree with the determination and view of the respondent. It is held that although there was, in the statutory merger of Shop and J & M, a reorganization, the statutory merger effected more than, and was not limited to "a mere change in identity, form, or place of organization," to which the terms of (F) are limited. Accordingly, section 381(b)(3) precluded the carryback of J & M's net operating loss for 1962 to a prior taxable year of the disappearing corporation, Shop.

The wording of subparagraph (F) is simple and clear. "Mere" means "nothing more or other than." (Webster's New World Dictionary, 1964 ed.) In this case, we are not concerned with the words in (F), "change in place of organization." Both corporations were organized in California and the statutory merger was under California law. The dispute in this case revolves about the meaning of the words "identity" and "form," as used in (F).

In *Hyman H. Berghash*, 43 T.C. 743, 752, affd. 361 F. 2d 257 (C.A. 2), this Court said the following about the scope of an (F) reorganization:

Although the exact function and scope of the (F) reorganization in the scheme of tax-deferred transactions described in section 368(a)(1) have never been clearly defined, it is apparent from the language of subparagraph (F) that it is distinguishable from the five preceding types of reorganizations as encompassing only the simplest and least significant of corporate changes. The (F)-type reorganization presumes that the surviving *corporation* is the *same corporation* as *the predecessor* in every respect, except for minor or technical differences. * * * For instance, the (F) reorganization typically has been understood to comprehend only such insignificant modifications as the reincorporation of the same corporate business with the same assets and the same stockholders surviving under a new charter either in the same [3] or in a different state,[4] the renewal of a corporate charter having a limited life,[5] or the conversion of a U.S.-chartered savings and loan association to a State-chartered institution.[6] [Footnotes omitted. Emphasis ours.]

In this case, the merger of Shop into J & M, the merger of two active corporations which conducted separate albeit similar businesses, involved changes in the identity and form of the two separate corporations which were substantial and beyond a "mere" change in identity or form. Prior to the merger, Shop carried on its own separate business, had its own customers, and negotiated its own contracts with its customers. It did not engage in making any products or items out of sheet metal (sheet metal fabrication). Its gross receipts and gross profit in 1959 amounted to $748,449.01 and $415,162.29, respectively. Its business was a general machine shop business. J & M, on the other hand, was organized in December 1959 primarily to engage in a business of fabricating sheet metal products. J & M carried on a separate business, had its own customers, and negotiated its own contracts with them. In all respects, the business of each corporation was its own separate business. In its first period of operations, the volume of business of J & M was smaller than that of Shop, its gross receipts and gross profit being only $247,193.78 and $80,213.14, respectively.

According to the balance sheet in the tax return of Shop for 1959, its total assets at the end of the year amounted to $278,683.75 and its earned surplus was $158,164.51. The assets of J & M at November 30, 1960, amounted to $129,444.44, and it had no earned surplus, but a deficit of $101.70. The merger of Shop into J & M resulted in a substantial betterment of the financial position of J & M. The deficit of J & M was eliminated by the surplus of Shop. After the merger, a creditor of J & M was in the advantageous position of having the security afforded by the larger assets and the surplus of Shop.

We believe that it cannot be said realistically that the merger of Shop into J & M amounted to a "*mere*" change in identity or form.

The legislative history of subparagraph (F) indicates that in providing for an (F) reorganization in section 368(a) (1), the Congress contemplated only changes in respect of a single corporation. In section 202(c) (2) of the Revenue Act of 1921, the following definition is set forth:

The word "reorganization", as used in this paragraph, includes a merger or consolidation * * *, or mere change in identity, form, or place of organization *of a corporation* (however effected) or * * * [Emphasis supplied.]

The underscored words "of a corporation," were omitted in section 203(h)·(1) of the Revenue Act of 1924 (the corresponding section) with the explanation that their elimination, and certain other changes, were "minor changes in phraseology." See H. Rept. No. 179, 68th Cong., 1st Sess., p. 13 (1924), 1939–1 C.B. (Part 2) 251. In *Hyman H. Berghash, supra* at 752, the Court observed that subparagraph (F) encompassed "only the simplest and least significant of corporate changes" and that "The (F)-type reorganization presumes that the surviving corporation is the same corporation as the predecessor in every respect, except for minor or technical differences." See Bittker, Federal Income Taxation of Corporations and Shareholders 359 (1939 ed). *Marr* v. *United States*, 268 U.S. 536; and *Cullinan* v. *Walker*, 262 U.S. 134. See also 3 Mertens, Law of Federal Income Taxation, sec. 2094 (1963 ed.)

Moreover it is our view that the two separate corporate entities of Shop and J & M before the merger, cannot be disregarded, each conducting its own separate business and that the combination of those two businesses into one corporate entity was not the *"mere"* change in identity or form contemplated by section 368(a) (1) (F). In *Libson Shops, Inc.* v. *Koehler*, 353 U.S. 382, the Supreme Court held that the merger of separate corporations (owned by the same interests) could not support, under the pertinent provision of the 1939 Code, the carryover of premerger loss to the postmerger income of the surviving corporation.

Petitioner relies on *Pridemark, Inc.*, 42 T.C. 510 (1964), affirmed and reversed 345 F. 2d 35 (C.A. 4, 1965), and *Davant* v. *Commissioner*, 366 F. 2d 874 (C.A. 5, 1966), modifying 43 T.C. 540 (1965), certiorari denied 386 U.S. 1022 (1967). Consideration is now given to these cases.

*Pridemark* involved three corporations, principally owned and controlled by the same individual. For several years these corporations had been selling prefabricated houses in different areas for an unrelated corporation. In February 1958, two of the corporations were dissolved, and in January 1959, a new corporation was formed and the assets of the dissolved corporations were used to purchase all the

stock of the new corporation. The successor corporation continued to operate the same type of business as its predecessors, but for a different manufacturer. We held that the transaction was a "mere change in identity, form, or place of organization" and that, therefore, the cash distributions made by one of the old corporations to its shareholders were taxable as dividends. On appeal, the Fourth Circuit agreed with the taxpayer in *Pridemark*, and stressed two factors before discussing the scope of section 368(a)(1)(F):

We * * * hold that the facts of this case do not bring it within the "reincorporation" area because the transactions were not motivated by a desire to avoid the payment of taxes. * * *

* * * * * * *

The new corporation cannot fairly be considered a continuation of the old business when in fact it has been continued, without interruption by Golden Key [the first manufacturer].

* * * * * * *

The second approach pressed by the Commissioner, that of the "F" reorganization, is limited in scope. * * * The section, though aged, has received almost no administrative or judicial attention until recently.[8] Its application is limited to cases where the corporate enterprise continues uninterrupted, except perhaps for a distribution of some of its liquid assets. There is a mere change in corporate vehicles, the transferee being no more than the alter ego of the transferror. * * *

[Footnotes omitted.]

The Court of Appeals concluded that there was no reorganization, under the facts; therefore, the Court of Appeals did not reach the question whether or not there was an (F) reorganization.

We have reviewed carefully and reconsidered our decision in *Pridemark*, and now conclude that our decision there was incorrect to the extent that it is inconsistent with the conclusion reached here. See *Estate of Bernard H. Stauffer*, 48 T.C. 277 (1967).

In *Davant* v. *Commissioner, supra*, modifying our decision of the case in this Court under the name of *South Texas Rice Warehouse Co.*, 43 T.C. 540, the Court of Appeals for the Fifth Circuit held that, under the particular facts, there was an (F) reorganization, although this Court had not reached that question but, instead, held that there was a (D) reorganization. Petitioner relies upon *Davant*. We are unable to agree with the interpretation of subparagraph (F) of the Fifth Circuit. See and compare *Columbia Gas of Maryland, Inc.* v. *United States*, 366 F. 2d 991 (Ct. Cl. 1966), where the Court of Claims concluded that the transaction there was not "a mere change in identity, form, or place of organization."

Petitioner also relies on three rulings of the respondent which, it is argued, authorize a carryback of petitioner's loss to Machine Shop's

taxable year 1959. Rev. Rul. 57–276, 1957–1 C.B. 126; Rev. Rul. 58–422, 1958–2 C.B. 145; and Rev. Rul. 66–284, 1966–2 C.B. 115. However, petitioner has overlooked a number of basic distinctions. First of all, the rulings deal with parent-subsidiary situations while the petitioner here is the surviving corporation of a merger between brother-sister corporations. That this is a material difference from the point of view of loss carrybacks is clear from a careful reading of Rev. Rul. 59–395, 1959–2 C.B. 475. That is, a member of an affiliated group may file a consolidated return with its constituent corporations. If a consolidated return is filed, the carryback and carryover provisions of the law are available to the group. Secs. 1.1502–21 (b) and 1.1502–79, Income Tax Regs. However, since a direct chain of ownership between the corporations is required before they can file consolidated returns, brother-sister corporations, related only by a common owner, are not entitled to this privilege. The theory behind this distinction is that if a parent and subsidiary can file a consolidated return and benefit from the carryback provisions of section 381(b), there is little reason to deny the same parent and subsidiary the right to effectuate the same thing another way—by merging one into the other or both into a newly formed corporation. Brother-sister corporations, on the other hand, cannot file consolidated returns and therefore are not covered by these rulings.

The respondent's determination is sustained. See *Estate of Bernard H. Stauffer, supra.*

*Decision will be entered for the respondent.*