THE EASTERN COLOR PRINTING COMPANY, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6711-72.    Filed October 21, 1974.

*George G. Vest* and *Dorrance Sexton, Jr.,* for the petitioner.
*Barry D. Gordon,* for the respondent.

OPINION

SCOTT, *Judge:* Respondent determined deficiencies in
petitioner's income tax for the calendar years 1964 and 1965 in
the amounts of $10,386.31 and $74,076.11, respectively.

The issue for decision is whether petitioner is entitled to carry
back net operating losses and investment credits which arose
after the merger into petitioner of its wholly owned subsidiary to
eliminate income taxes of that subsidiary for years prior to the
merger.

All of the facts have been stipulated and are found accordingly.
Therefore, we will set forth in this opinion only those facts
necessary to an understanding of the issue.

Petitioner is a Connecticut corporation which at the time of
the filing of the petition in this case had its principal office in
Waterbury, Conn.

Prior to October 1, 1966, petitioner had a wholly owned sub-
sidiary, the Eastern Color Printing Co., hereinafter Old Eastern.
During the years 1964 and 1965 Old Eastern used an accrual
method of accounting and reported its income on the basis of a
calendar year. It filed its Federal income tax returns for the years
1964 and 1965 with the district director of internal revenue at
Hartford, Conn.

Petitioner was incorporated in 1953 as Mattatuck Associates,
Inc., and under its certificate of incorporation, its activities were
limited to being a holding company. After several transactions

not here relevant, by 1955 petitioner's only asset was 80 percent of the stock of Old Eastern. From 1955 to 1960 petitioner owned 80 percent of the stock of Old Eastern and 20 percent was owned by third parties. In December 1960 Old Eastern redeemed the 20 percent of the shares not owned by petitioner, and thereafter was a wholly owned subsidiary of petitioner. From the time of its incorporation to October 1, 1966, petitioner was a holding company and its only assets were cash, its corporate name, and stock of Old Eastern or of the predecessor of Old Eastern. Petitioner's sole source of income prior to October 1, 1966, consisted of two dividends of $50,400 each paid to it by its subsidiary, Old Eastern, in 1964 and 1965. Old Eastern was engaged in the printing business, specializing in color printing for the periodical market.

On October 1, 1966, Old Eastern was merged into its parent, petitioner, pursuant to the laws of the State of Connecticut. After the merger petitioner continued the business conducted by Old Eastern prior to the merger. There was no change in the assets, location, or in the personnel or management of Old Eastern. With minor exceptions the directors and officers of Old Eastern and petitioner prior to the merger were the same individuals and after the merger these same individuals, with the exception of one director of Old Eastern, were the officers and directors of petitioner.

In early 1966 petitioner's president requested a ruling from the Internal Revenue Service that the proposed merger of Old Eastern into petitioner would constitute a liquidation under the provisions of section 332, I.R.C. 1954,[1] and would be governed by the relevant provisions of that section for the purposes of determining gain or loss, the basis of assets, and the treatment of earnings and profits. On July 20, 1966, petitioner received a letter from the Acting Chief, Reorganization Branch of the Internal Revenue Service, containing a ruling that provided the requirements of section 332(b) were met, (1) no gain or loss would be recognized to petitioner on its receipt of property distributed in complete liquidation of Old Eastern; (2) that under section 336, no gain or loss would be recognized to Old Eastern on the distribution of its property in complete liquidation; (3) that the basis of the property of Old Eastern

---

[1] All references are to the Internal Revenue Code of 1954.

received by petitioner would be the same as the basis of such property in the hands of Old Eastern; and (4) that the earnings and profits of Old Eastern as of the effective date of the liquidation would retain their character as earnings and profits in the hands of petitioner. This letter contained the further statement:

No opinion is expressed as to the tax treatment of the transaction under the provisions of any of the other sections of the Code and Regulations which may also be applicable thereto or to the tax treatment of any conditions existing at the time of, or effects resulting from, the transaction which are not specifically covered by the above ruling.

On July 25, 1966, Old Eastern held a meeting of its board of directors at which the letter from the Acting Chief of the Reorganization Branch of the Internal Revenue Service was presented. At that meeting the directors of Old Eastern voted that their counsel be instructed to proceed with the proposed merger.

On September 26, 1966, the proposed merger was approved by the shareholders of Old Eastern and on that same date was also approved by its board of directors. On September 28, 1966, the stockholders and board of directors of petitioner approved the merger of Old Eastern into petitioner, and on that date the certificate of merger between Old Eastern and petitioner was executed. On October 1, 1966, the certificate of merger was filed with the secretary of state of Connecticut. Pursuant to this certificate Old Eastern ceased to exist and its property became that of petitioner. All shares of Old Eastern which were owned by petitioner were canceled.

Petitioner filed a consolidated income tax return reporting a consolidated net loss of $39,547.19 for the calendar year 1966 with its subsidiary, Old Eastern. This return contained a statement by petitioner's president to the effect that the 1966 merger of Old Eastern into petitioner was a liquidation of a subsidiary under section 332. On this return no gain or loss was recognized by petitioner on receipt of Old Eastern's assets, and petitioner used as the basis of the assets the basis they had had in the hands of Old Eastern.

In 1967 and 1968 petitioner sustained net losses in the amounts of $83,379.99 and $400,150.89, respectively.

On July 10, 1969, petitioner filed an amended return for the taxable year 1966 and attached a statement thereto that the

1966 merger of Old Eastern into petitioner constituted a reorganization under section 368(a)(1)(F).

Based on this amended return, petitioner filed on July 9, 1969, a claim for a tentative carryback of its net operating losses from 1968 to the years 1965, 1966, and 1967. Prior thereto petitioner had filed a claim for a tentative carryback of unused investment credit from 1966 to 1964, claiming a refund of 1964 taxes of Old Eastern of $10,386.31, which tentative carryback claim had been allowed. The tentative carryback claim filed on July 9, 1969, of net operating loss to 1965 was likewise allowed in the amount of $74,076.11. Also, on July 9, 1969, petitioner filed a claim on Form 843 seeking refund of $50,126.29 of taxes paid by Old Eastern for its calendar year 1964.

Respondent in his notice of deficiency determined the deficiencies here in issue with the explanation that the investment credit of $10,386.31 carried back from the taxable year 1966 to the taxable year 1964, and previously tentatively allowed, resulted in the deficiency because the credit was not allowable since there was a liquidation under section 332. For this same reason respondent determined a deficiency in the amount of the refund made on the basis of the tentative carryback claim of net operating loss from the taxable year 1968 to the taxable year 1965. Also, in the notice of deficiency respondent stated that if a petition were filed with the Tax Court, the issue set forth in the claim for refund filed by petitioner should be raised before this Court and the issue of the validity of this claim has been raised in this case by petitioner.

Petitioner's position is that the merger of Old Eastern into it on October 1, 1966, constituted a reorganization under section 368(a)(1)(F), and, therefore, in accordance with the provisions of section 381(b), it is entitled to the carrybacks of unused investment credit and net operating losses even though the merger might also constitute a liquidation within the provisions of section 332(a).

Respondent does not question the amount of unused investment credit and net operating losses claimed by petitioner. He also concedes (see fn. 4, p. 32 *infra*) that the transaction here involved falls within the description of a mere change in identity, form, or place of organization as set forth in section 368(a)(1)(F). He argues that petitioner is not entitled to the claimed carrybacks in that the merger of Old Eastern into petitioner

constituted a liquidation under section 332(a) and that where such a liquidation has occurred a taxpayer is not entitled to exclusion from the provision of section 381(b) prohibiting the carryback of a net operating loss even though the acquisition may also meet the description of a reorganization under section 368(a)(1)(F).

Respondent's first argument is that if a transaction is such that it amounts to a liquidation within the meaning of section 332, only the provisions of that section may govern the application of section 381(b)(3)[2] to the transaction. He concludes that for this reason the provisions of section 381(b)(3) that in the case of an acquisition other than one described in section 368(a)(1)(F), the corporation acquiring property by a transfer shall not be entitled to carry back a net operating loss for a year ending after the date of the transfer to a taxable year of the transferor corporation prohibit petitioner from being entitled to the claimed carrybacks to the years 1964 and 1965 of Old Eastern even though the transaction whereby it acquired Old Eastern's assets meets the description of a reorganization in section 368(a)(1)(F) as well as that of a liquidation under section 332(a).

Respondent's second argument is that even if petitioner is entitled to consider the transfer of Old Eastern's assets to it to be both a liquidation under section 332 and a reorganization under section 368(a)(1)(F), the transaction does not fall within the provisions of section 381(a)(2) in that it is not a transfer to which section 361 applies because no stock or securities were issued by petitioner to Old Eastern in exchange for the property of Old Eastern. Respondent states that since the provisions of section 381(a)(2) are not applicable to the transfer of Old Eastern's property to petitioner, the only way in which section 381 can be applicable to petitioner is because of the transaction

---

[2] SEC. 381(b). OPERATING RULES.—Except in the case of an acquisition in connection with a reorganization described in subparagraph (F) of section 368(a)(1)—

(1) The taxable year of the distributor or transferor corporation shall end on the date of distribution or transfer.

(2) For purposes of this section, the date of distribution or transfer shall be the day on which the distribution or transfer is completed; except that, under regulations prescribed by the Secretary or his delegate, the date when substantially all of the property has been distributed or transferred may be used if the distributor or transferor corporation ceases all operations, other than liquidating activities, after such date.

(3) The corporation acquiring property in a distribution or transfer described in subsection (a) shall not be entitled to carry back a net operating loss or a net capital loss for a taxable year ending after the date of distribution or transfer to a taxable year of the distributor or transferor corporation.

meeting the provisions of section 381(a)(1) [3] because of being a liquidation under section 332. From this respondent concludes that it follows that even though petitioner received the property of Old Eastern in a reorganization described in section 368(a)(1)(F), it is not excepted from the provisions of section 381(b) because this exception only applies to a reorganization under section 368(a)(1)(F) which meets the exchange of stock for property requirement of section 361.

In our view neither of respondent's positions is in accordance with the provisions of the statute. Therefore, if we accept respondent's concession that the transaction whereby petitioner acquired the assets of Old Eastern meets all the requirements of section 368(a)(1)(F), we would agree with petitioner that it is entitled to the claimed carrybacks of investment credit and net operating loss.[4]

In *Estate of Bernard H. Stauffer,* 48 T.C. 277 (1967), revd. 403 F. 2d 611 (C.A. 9, 1968), we held that a merger of three

---

[3] SEC. 381(a). GENERAL RULE.—In the case of the acquisition of assets of a corporation by another corporation—

(1) in a distribution to such other corporation to which section 332 (relating to liquidations of subsidiaries) applies, except in a case in which the basis of the assets distributed is determined under section 334(b)(2); or

(2) in a transfer to which section 361 (relating to nonrecognition of gain or loss to corporations) applies, but only if the transfer is in connection with a reorganization described in subparagraph (A), (C), (D) (but only if the requirements of subparagraphs (A) and (B) of section 354(b)(1) are met), or (F) of section 368(a)(1),

the acquiring corporation shall succeed to and take into account, as of the close of the day of distribution or transfer, the items described in subsection (c) of the distributor or transferor corporation, subject to the conditions and limitations specified in subsections (b) and (c).

[4] Respondent in his original brief did not discuss the cases dealing with the application of sec. 368(a)(1)(F) to a transfer by one corporation of all of its assets to another corporation, all of the stock of which is owned by the same individuals in the same proportion as the stock of the transferor corporation. See *Davant v. Commissioner,* 366 F. 2d 874, 879 (C.A. 5, 1966), modifying 43 T.C. 540 (1965); *Estate of Stauffer v. Commissioner,* 403 F. 2d 611 (C.A. 9, 1968), reversing 48 T.C. 277 (1967); *Associated Machine,* 48 T.C. 318 (1967), revd. 403 F. 2d 622 (C.A. 9, 1968). In his original brief, respondent made his argument assuming that the transaction here met the provisions of sec. 368(a)(1)(F) and made the final statement that "petitioner's failure to come within *Code* sec. 381(a)(2), eliminates it from contesting that it is not subject to the limitations of *Code* sec. 381(b) because the transaction herein meets the definition of *Code* sec. 368(a)(1)(F)." In his reply brief respondent mentions these cases and states that they are irrelevant to the issue here since they involve the "merger of two operating companies." He then pointed out that the parties in this case stipulated that prior to the merger, petitioner was a holding company and Old Eastern an operating company, and that after the merger petitioner carried on unchanged the business of Old Eastern and concluded, "Thus, although as petitioner contends the transaction herein meets the definition of a reorganization under *Code* sec. 368(a)(1)(F), a fact which respondent did not deny in his main brief, respondent submits that *Code* sec. 332 is likewise applicable and in the instant setting, *Code* sec. 332 is the sole operative section."

corporations, the stock of each of which was owned in equal proportions by the same individuals, all of which were operating companies, did not meet the definition of a reorganization under section 368(a)(1)(F). In so holding, we pointed to the many difficulties that would arise if the merger of operating companies owned by the same interests were considered to be merely a change in identity, form, or place of organization of the corporation. We stated at page 300:

> Only by disregarding the corporate entities of the three old companies can it be said there was merely that type of purely formal change that characterizes an (F) reorganization. These corporations were separate entities and were treated as such for all purposes, including the computation of taxes. Indeed, there were three separate surtax exemptions, one for each corporation, whereas the new entity admittedly was entitled to only one such exemption. This is not a case of multiple corporations carrying on a single business which may be ignored as a sham. Cf. *Aldon Homes, Inc.,* 33 T.C. 582. There is no question here that these were valid separate corporations, each conducting its own business. And we think that in such circumstances, the unification of these enterprises under a single corporate roof cannot qualify as the kind of mere change in identity, etc., contemplated by section 368(a)(1)(F).

We used much the same reasoning in reaching our conclusion in *Associated Machine,* 48 T.C. 318 (1967), revd. 403 F. 2d 622 (C.A. 9, 1968).

It is clear that cases involving the merger of one or more operating companies are factually distinguishable from a case involving the merger of an operating company into its parent holding company. Even though petitioner was a separate corporate entity from Old Eastern in the formal sense, in any true operational sense, it was merely the stockholder of Old Eastern. Its only asset other than cash and its corporate name throughout its existence had been stock of Old Eastern or predecessors of Old Eastern and for 6 years prior to the merger here involved it had owned all of Old Eastern's stock and Old Eastern's stock had been its only asset. Even though petitioner and Old Eastern were separate corporate entities, in reality petitioner was merely the stockholder of Old Eastern. In removing the intervening layer of stock so that petitioner's stockholders became directly the stockholders of Old Eastern, petitioner made a much less substantive change than the change that occurs where there is a merger of two operating companies.

In this case the position of both petitioner and respondent is that the change here was merely one of identity or form which

the parties chose to effect by a merger. For this reason, limited to the precise facts of this case, we are willing to accept respondent's concession that the transaction between Old Eastern and petitioner met the provisions of section 368(a)(1)(F) by being a "mere change of identity, form, or place of organization, however effected." In reaching this conclusion we are in no way reconsidering our position in the *Stauffer* and *Associated Machine* cases, nor are we determining whether in a factual situation which varied from that in the instant case we would conclude that the merger of a subsidiary into its parent holding company met the requirements of section 368(a)(1)(F).

Respondent relies, in support of his position that if a transaction meets the provisions of section 332, then all further transactions must be handled as if only that section applied to the transaction, on *Argus, Inc.,* 45 T.C. 63 (1965), and *Kansas Sand & Concrete, Inc.,* 56 T.C. 522 (1971), affd. 462 F. 2d 805 (C.A. 10, 1972). Both of those cases dealt with liquidations which came within the provisions of section 334(b)(2). In both cases we pointed out the history of the provisions contained in section 334(b)(2) and likened the situation there to the purchase by the transferee corporation of the assets of the transferor corporation. In both cases we pointed out that the reason for the different treatment of the transaction was because of the application of section 334(b)(2). In *Argus, Inc.,* we stated at page 68:

Respondent apparently recognizes that regardless of whether a transaction comes under the provisions of section 332 or 368(a)(1)(A), his regulations require the carryover of the subsidiary's bad debt reserve to the parent except in those cases under section 332 to which section 334(b)(2) is applicable in determining the basis of the assets transferred. * * *

In *Kansas Sand & Concrete, Inc., supra,* in holding that the taxpayer there involved was required to use as the basis of the assets of its subsidiary the amount paid for the stock of that subsidiary, which it had purchased in the preceding 12 months, under the provisions of section 334(b)(2), we stated at page 530:

And, while consistency may require that a transaction or series of transactions falling under section 334(b)(2) should, for related purposes, be treated as the purchase by one corporation of the assets of another corporation, *Argus, Inc.,* 45 T.C. 63, 69 (1965), our decision today does not necessarily require that a transaction considered a distribution in complete liquidation within the meaning of section 332 for the purpose of applying section 334(b)(2) may not be considered a reorganization under section 368(a)(1)(A) for some other unrelated purpose. See Bittker & Eustice, "Complete Liquidations and Related

Problems," 26 Tax L. Rev. 191, 226 (1971); cf. *King Enterprises, Inc.* v. *United States*, 418 F. 2d 511 (Ct. Cl. 1969). * * *

In our view in both of these cases we made it clear that while a corporation was required to use the basis of assets and other related adjustments required by section 334(b)(2) when the standards of that section were met, it did not follow that for other purposes, provisions of other sections could not control if the factual situation was such that they were controlling. Rather than supporting respondent's view, these cases support the view taken by petitioner that where section 334(b)(2) has no application to a liquidation under section 332, the fact that a transaction meets the provisions of section 332 does not mean that it may not be treated under section 381(b) as a reorganization within the provisions of section 368(a)(1)(F) if it also meets the provisions of that section.

In our view respondent's second argument is likewise without merit. It is clear that the transaction whereby Old Eastern was merged into petitioner meets the precise language of section 381. It was a distribution to which section 332 applied, and it was also a reorganization described in section 368(a)(1)(F). Therefore, it would come within section 381(a), and it would be excluded from the provisions of section 381(b) because of being a reorganization under section 368(a)(1)(F). There is nothing in section 381(b) which says that for it to be inapplicable to a reorganization under section 368(a)(1)(F), that reorganization must be one to which section 361 applies. Under the circumstances here present, in our view, a provision which is not explicitly in section 381(b) should not be read into that section.

Respondent in his brief relies on *Gutbro Holding Co.,* 47 B.T.A. 374 (1942), revd. 138 F. 2d 16 (C.A. 2, 1943), and *Rogan v. Starr Piano Co., Pacific Division,* 139 F. 2d 671 (C.A. 9, 1943), involving liquidations that were subject to revenue acts prior to the amendment of the Revenue Act of 1934. These cases held that although a merger of a subsidiary into its parent constituted a reorganization within the meaning of the predecessor section of section 368(a)(1)(A), the transaction did not meet the nonrecognition of gain or loss provision because there was no exchange of stock for property as required by the predecessor of section 361.

We discussed these cases in *American Manufacturing Co.,* 55 T.C. 204, 218-219 (1970), and also discussed the legislative

history of the enactment of section 112(b)(6), the predecessor of section 332, pointing out that it had been contended prior to the enactment of this section that the nonrecognition provision would not allow liquidations of a subsidiary into a parent to be tax free because there was no stock issued in exchange for the assets. We concluded that this legislative history—

lends credence to a view that section 332 is intended to cover an area in which the reorganization nonrecognition provisions are inapplicable to a "statutory merger or consolidation" under section 368(a)(1)(A) that, in substance and effect, is no more than a liquidation of a subsidiary into its parent with all assets going to the parent. * * *

We, however, concluded in the *American Manufacturing Co.* case that even though there might be some indication in the regulations under section 332 that the provisions of that section were to take precedence over the reorganization nonrecognition sections, even when stock or other property have been exchanged in a subsidiary-parent merger, that there was nothing in the legislative history to "indicate that a liquidation of a subsidiary into its parent cannot be a step in a reorganization falling under the other definitions of section 368, or that the section is exclusive."

In several cases we have held under factual circumstances differing from those here present that the requirement of the reorganization provisions that an exchange of stock for property be made was met although no actual exchange of stock occurred since such an exchange would be a useless gesture; see *South Texas Rice Warehouse Co.,* 43 T.C. 540 (1965), modified on another issue sub nom. *Davant v. Commissioner,* 366 F. 2d 874, 879 (C.A. 5, 1966); *James Armour, Inc.,* 43 T.C. 295 (1964). In those cases we did not discuss our holding in *Gutbro Holding Co., supra,* that a statutory merger of a subsidiary into its parent with the stock of the subsidiary canceled did not meet the statutory provisions for nonrecognition of gain since the requirement of the statute of issuance of stock had not been met. However, it is not necessary that we decide in this case whether we would extend the holding of such cases as *South Texas Rice Warehouse* and *James Armour* (43 T.C. at 307) that "we cannot conclude that the statute requires such a vain act" and "conclude, therefore, that there was in substance an exchange of stock" to the type of transaction here present. In our view there is no requirement for a reorganization under section 368(a)(1)(F) to have an issuance

of stock for property involved in order to be excluded from the provision of section 381(b)(3), prohibiting the carryback of net operating loss to the years prior to the transfer. Section 381(b)(3) makes no reference to any requirement other than that the reorganization be one "described in subparagraph (F) of section 368(a)(1)." Since the reorganization here is one "described in subparagraph (F) of section 368(a)(1)," petitioner is entitled to its net operating loss carrybacks and its investment credit carryback.

The Court of Claims in *Movielab, Inc. v. United States,* 33 AFTR 2d 74-905, 74-1 USTC par. 9309, decided March 20, 1974, reached the same conclusion we have reached in the instant case using some of the same reasoning we have used in this case, and so did the United States Court of Appeals for the Sixth Circuit in *Performance Systems, Inc. v. United States,* decided July 30, 1974, affirming the unreported decision of the United States District Court for the Middle District of Tennessee, 32 AFTR 2d 73-5774, 73-2 USTC par. 9743 (1973). In our view the *Movielab* and *Performance Systems* cases reached the correct result as to the exclusion from the provisions of section 381(b)(3) of an (F) reorganization, the result of a statutory merger which also met the provisions of section 332. Where the change is merely one of form and not one of substance there appears to be no reason not to treat the continuing corporation as if no change had occurred in determining the right of the business to carrybacks.

Both the *Movielab* and *Performance Systems* cases involved an issue of whether the merger of two active companies might constitute an (F) reorganization, and by our acceptance of their holding with respect to the applicability of section 381(b)(3) to an admitted (F) reorganization, we do not intend to in any way accept their holding as to what in fact does constitute a reorganization within the provisions of section 368(a)(1)(F).

We decide the only issue presented for our decision for petitioner, but because of the necessity of computations as to the tax effect of petitioner's refund claim,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

QUEALY, *J.,* dissenting: I must respectfully dissent from the opinion of the majority. The opinion of the majority is bottomed upon a concession supposedly made by the respondent in his brief that the transaction in question, which was cast in the form of a statutory merger under section 368(a)(1)(A), also constituted "a mere change in identity, form, or place of organization" within the meaning of section 368(a)(1)(F). This is a question of law. I cannot accept statements made by the respondent in his brief for purposes of argument as a basis for decision on matters of law where such statements are in conflict with prior decisions of this Court.

In 1966, the petitioner planned and executed an upstream merger of its subsidiary into itself which qualified as a liquidation under section 332.[1] Petitioner so reported the merger on its 1966 consolidated corporate return.

As a result of losses sustained in 1967 and 1968, however, petitioner subsequently found it advantageous to treat the transaction as a reorganization under section 368(a)(1)(F) since this section, unlike section 332, was exempt from the carryback limitations of section 381(b). Consequently, in 1969, petitioner amended its 1966 corporate return to reflect its new position.

Prior to the merger, petitioner and its subsidiary were separate and distinct taxable entities, albeit that the former was a holding company. For the reasons so thoroughly delineated by the Court in *Estate of Bernard H. Stauffer,* 48 T.C. 277 (1967), revd. 403 F. 2d 611 (C.A. 9, 1968), it is my view that Congress never intended section 368(a)(1)(F) to encompass the merger of two separate taxable entities. See also *Associated Machine,* 48 T.C. 318 (1967), revd. 403 F. 2d 622 (C.A. 9, 1968). Since an appeal in this case would lie in the Second Circuit, we are not bound by the cases to the contrary. E.g., *Davant v. Commissioner,* 366 F. 2d 874, 879 (C.A. 5, 1966). I would reaffirm this Court's position in *Estate of Bernard H. Stauffer, supra.*

Contrary to the opinion of the majority, I interpret section 381(b) to be merely a limitation upon section 381(a). Indeed, the flush language of section 381(a) clearly states that the general rules set out in subsection (a) are "subject to the conditions and

---

[1] Prior to effecting the merger, petitioner solicited and received a private ruling from respondent stating that the proposed transaction qualified as a liquidation under sec. 332.

limitations specified in subsections (b) and (c)." Assuming arguendo that the merger falls within the descriptive language of section 368(a)(1)(F), we are faced with the additional requirement of section 381(a)(2) that the transaction must be one to which section 361 applies. It was the inability of an upstream merger, such as the one we have here, to meet the non-recognition requirements of section 112(b)(3) and (4) of the Revenue Act of 1934, the latter being the predecessor to section 361, that prompted Congress to enact section 332 in the Revenue Act of 1935. See Hearings on H.R. 8974 before the Senate Committee on Finance, 74th Cong., 1st Sess., pp. 171, 302 (1935).

STERRETT and WILES, *JJ.,* agree with this dissent.